The STATE of Utah, Plaintiff and Appellant,

v.

Steve GOMEZ and Jacqueline Gomez, Defendants and Respondents.

No. 20520.

Supreme Court of Utah.

May 6, 1986.

Rehearing Denied July 29, 1986.

David L. Wilkinson, Atty. Gen., J. Stephen Mikita, Ted Cannon, Co. Atty., Gregory L. Bown, Salt Lake City, for plaintiff and appellant.

Nancy Bergeson, Khris Harrold, Salt Lake City, for defendants and respondents.

ZIMMERMAN, Justice:

The State of Utah appeals from the trial court's order dismissing an information charging Steve and Jacqueline Gomez with wrongful use of a financial transaction card under section 76–6–506.1 of the Code. The trial court found that sections 76–6–506.1 and 76–6–506.2 proscribed identical conduct, that section 76–6–506.2 carried a lesser penalty, and that the defendants were entitled to be charged with the lesser crime. We conclude that the statutes do not proscribe the same conduct because they do not contain the same elements; therefore, we reverse.

In January of 1985, the defendants were each charged with two counts of wrongful use of a financial transaction card, a second degree felony.[1] U.C.A., 1953, § 76–6–506.1 (Repl.Vol. 8B, 1978, Supp.1985). The State alleged that the defendants signed for purchases of $111.00 and $294.51 by using the American Express card of one Anne Bogarty. Counsel for Steve Gomez filed a motion to reduce the charges to either a third degree felony under section 76–6–506.2, or a class A misdemeanor under section 76–6–506.5, on the grounds that sections 76–6–506.1 and –506.2 proscribe the same conduct and that a defendant has a right to be charged with the offense carrying the lesser penalty.[2] The trial court agreed and suggested that the information be amended to charge the lesser offense. The State, however, took the position that the proper remedy would be a dismissal by the trial court and refused to amend the information. The trial court

1. Section 76–6–506.1 states:

Any person who, with intent to defraud, counterfeits, falsely makes, embosses, or encodes magnetically or electronically any financial transaction card, or who with intent to defraud, signs the name of another or a fictitious name to a financial transaction card, sales slip, sales draft, or any instrument for the payment of money which evidences a financial transaction card transaction, is guilty of a felony of the second degree.

2. Section 76–6–506.2 provides:

It is unlawful for any person to: (1) Knowingly, with intent to defraud, obtain or attempt to obtain credit or purchase or attempt to purchase goods, property, or services, by the use of a false, fictitious, altered, counterfeit, revoked, expired, stolen, or fraudulently obtained financial transaction card, by any financial transaction card credit number, personal identification code, or by the use of a financial transaction card not authorized by the issuer or the card holder; (2) Use a financial transaction card, with intent to defraud, to knowingly and willfully exceed the actual balance of a demand or time deposit account;

(3) Use a financial transaction card, with intent to defraud, to willfully exceed an authorized credit line by $500 or more, or by 50% of such line, whichever is greater; (4) Willfully, with intent to defraud, deposit into his or any other account by means of an automated banking device, any false, fictitious, forged, altered, or counterfeit check, draft, money order, or any other similar document; or (5) Make application for a financial transaction card to an issuer, while knowingly making or causing to be made a false statement or report relative to his name, occupation, financial condition, assets, or to willfully and substantially undervalue or understate any indebtedness for the purpose of influencing the issuer to issue the financial transaction card.

Section 76–6–506.5 states:

Any person found guilty of unlawful conduct described in sections 76–6–506.2, 76–6–506.3, or 76–6–506.4 is guilty of a class A misdemeanor. If the retail value of the money, goods, or services obtained or attempted to be obtained through unlawful conduct described in sections 76–6–506.2 or 76–6–506.4 is $250 or more, the person is guilty of a felony of the third degree.

then dismissed the information as to Steve Gomez. Counsel for the State and for Jacqueline Gomez stipulated that she should be treated like her co-defendant, and the charges against Jacqueline were also dismissed. The State appeals from the dismissal.

Before reaching the merits, we must first determine whether the State has the authority to appeal. Utah Rule of Criminal Procedure 26(c)(1) provides that "[a]n appeal may be taken by the prosecution: (1) From a final judgment of dismissal." U.C.A., 1953, § 77–35–26(c)(1) (Repl.Vol. 8C, 1982, Supp.1985). The defendants argue that the State moved for dismissal and now attempts to use that order of dismissal to obtain review of the trial court's decision to reduce the charges, a decision that would not otherwise be appealable as a matter of right. The defendants assert that under our recent ruling in *State v. Waddoups,* Utah, 712 P.2d 223 (1985), the Court should not consider that claim.

We agree that the State has a right to appeal only "[f]rom a final judgment of dismissal." However, the facts of this case are quite different from those in *Waddoups.* In *Waddoups,* the trial court granted a defense motion to suppress the out-of-court statements of a witness. The State chose not to proceed to trial, but instead moved to dismiss the information. It then attempted to appeal the dismissal as a matter of right and to attack the suppression ruling. However, the law is clear that the proper way to obtain review of a suppression ruling is to ask this Court to grant a discretionary interlocutory appeal. U.C.A., 1953, § 77–35–26(c)(5) (Repl. Vol. 8C, 1982, Supp.1985). We dismissed the appeal.

■ In the present case, the trial court's determination that the charges should be reduced to an offense carrying a lesser penalty not charged in the original information prevented the State from proceeding on the original charges. The effect of the trial court's ruling was to block prosecution and, in effect, to dismiss the original charges. Under these circumstances, the State properly suggested that the trial court formally dismiss the information and then appealed "[f]rom a final judgment of dismissal." These facts do not show an attempt by the State to skirt the restrictions of Rule 26 appeals. We therefore reach the merits.

The analytical framework for evaluating the defendants' claim is set out in *State v. Bryan,* Utah, 709 P.2d 257, 263 (1985):

> [T]he criminal laws must be written so that there are significant differences between offenses and so that the exact same conduct is not subject to different penalties depending on which of two statutory sections a prosecutor chooses to charge. To allow that would be to allow a form of arbitrariness that is foreign to our system of law.

Thus, in the present case, the question is whether the two statutes at issue proscribe exactly the same conduct, *i.e.,* do they contain the same elements? *See State v. Shondel,* 22 Utah 2d 343, 346, 453 P.2d 146, 148 (1969); *State v. Clark,* Utah, 632 P.2d 841, 844 (1981); *State v. Loveless,* Utah, 581 P.2d 575, 576–77 (1978); *State v. Smathers,* Utah, 602 P.2d 708, 710 (1979); and *State v. Bryan,* 709 P.2d at 263–64.

■ The State contends that the statutes at issue do not have identical elements because section 76–6–506.1 requires proof of a "signing" of a sales slip, whereas section 76–6–506.2 does not, and section 76–6–506.2 requires proof of the value of items fraudulently purchased, while section 76–6–506.1 does not. We agree. Clearly, the legislature has determined that the act of fraudulently "signing" a card or sales slip should be punished more severely than the mere fraudulent use of a financial transaction card. The legislature certainly has the power to make such a judgment. *See State v. Twitchell,* 8 Utah 2d 314, 333 P.2d 1075, 1078 (1959). As we observed in *State v. Clark:*

> It is not unconstitutional for a state to impose a more severe penalty for a particular type of crime than the penalty which is imposed with respect to the general category of crimes to which the spe-

cial crime is related or of which it is a subcategory....

As long as the legislative classifications are not arbitrary, the fact that conduct may violate both a general and a specific provision of the criminal laws does not render the legislation unconstitutional, even though one violation is subject to a greater sentence.

632 P.2d at 843–44. It is true that the reason for the distinction between subsections –506.1 and –506.2 in the financial transaction card offenses is rather hard to fathom, especially when most credit card sales probably involve a "signing," but we cannot say it is irrational or arbitrary.[3]

■ We noted in *State v. Clark* that "when two statutes under consideration do not proscribe the same conduct ... [the] defendant may be charged with the crime carrying the more severe sentence...." 632 P.2d at 844 (citations omitted). The statutes at issue here are clearly distinguishable. The record indicates that the defendants were charged with signing another's name to sales slips when they allegedly made purchases with the improperly obtained credit card. Therefore, the State acted within its prosecutorial discretion when it charged Steve and Jacqueline Gomez with a second degree felony under the "signing" offense, section 76–6–506.1.

The trial court's ruling is reversed.

HALL, C.J., and STEWART, HOWE and DURHAM, JJ., concur.

---

3. Examples of transactions that do not involve a "signing" include purchases by telephone or computer modem, use of a bank automated teller machine, or use of a credit card for identification.