2006 UT 42

**STATE of Utah, Plaintiff and Petitioner,**

**v.**

**Larry Niel BECKSTEAD, Defendant and Respondent.**

No. 20041023.

Supreme Court of Utah.

Aug. 4, 2006.

Mark L. Shurtleff, Att'y Gen., Marian Decker, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Randall W. Richards, Ogden, for defendant.

---

NEHRING, Justice:

¶ 1 In this case, we define the scope of a sentencing judge's duty to assure himself that a defendant's guilty plea is knowing and voluntary when the judge discovers that the defendant has been drinking before appearing to enter his plea. We conclude that a sentencing judge has substantial latitude in selecting the method he uses to supplement the elements of a plea colloquy as required by rule 11 of the Utah Rules of Criminal Procedure in order to assure that a plea is knowing and voluntary. We expressly decline to mandate the use of particular questions or procedures by a sentencing judge who considers a guilty plea by a defendant who has consumed an intoxicant. Instead, we believe that a sentencing judge is uniquely situated to meaningfully engage a defendant in an exchange that will evoke sufficient relevant evidence to determine whether or not the defendant's plea should be accepted.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 Larry Niel Beckstead was charged with driving under the influence with priors, a third degree felony, in violation of Utah Code section 41-6-44. Following negotiations, he entered a guilty plea. Before accepting Mr. Beckstead's plea, the sentencing judge conducted a colloquy in which he informed the defendant of his rights and the consequences of his guilty plea on those rights as required by rule 11 of the Utah Rules of Criminal Procedure.

¶ 3 Immediately following the colloquy and the court's acceptance of Mr. Beckstead's guilty plea, the prosecutor informed the judge that she could smell alcohol on Mr. Beckstead's breath. The judge then questioned Mr. Beckstead on the subject of his sobriety. Mr. Beckstead admitted that he had consumed some alcohol earlier that morning, but insisted that his judgment was unimpaired. After putting numerous questions to Mr. Beckstead concerning his lucidity, to which Mr. Beckstead responded clearly and coherently in every instance, the court renewed its acceptance of his guilty plea, sentenced him, and took Mr. Beckstead into custody.

¶ 4 Less than a month later, Mr. Beckstead filed a pro se motion to withdraw his guilty plea. He claimed that he had been intoxicated when he pleaded guilty, that his plea was consequently not knowing and voluntary, and that he was therefore entitled to withdraw it.

¶ 5 The sentencing court held a hearing on the motion. Before the hearing, the sentencing judge reviewed the video recording of the plea hearing. At the conclusion of the hearing, the sentencing judge stated that he could not find any evidence suggesting impairment. The judge told Mr. Beckstead that "I didn't

see slurred speech, I didn't see wavering or, or having trouble standing up or talking at all.... [Y]ou seemed to understand all of the questions that I put to you and your answers appeared to be articulate and coherent." The court ultimately ruled that Mr. Beckstead's plea was knowing and voluntary, and thus denied his motion to withdraw the guilty plea.

¶ 6 Mr. Beckstead appealed the decision, and the court of appeals reversed the sentencing court. It found "that the [sentencing] court's knowledge that Beckstead had been drinking prior to the hearing triggered a duty of further inquiry to strictly comply with rule 11." *State v. Beckstead,* 2004 UT App 338, ¶ 11, 100 P.3d 267. We granted certiorari review to consider the scope of a sentencing court's duty to explore the effects of alcohol consumption on a defendant's ability to enter a knowing and voluntary guilty plea.

## STANDARD OF REVIEW

¶ 7 Challenges to a denial of a motion to withdraw a guilty plea invite multiple standards of review. We will overturn a sentencing court's ruling on a motion to withdraw a guilty plea only when we are convinced that the court has abused its discretion. We will disturb findings of fact made in connection with a ruling on a motion to withdraw a guilty plea only if they are clearly erroneous. *State v. Benvenuto,* 1999 UT 60, ¶ 11, 983 P.2d 556.

¶ 8 Moreover, we have noted that "the ultimate question of whether the [sentencing] court strictly complied with constitutional and procedural requirements for entry of a guilty plea is a question of law that is reviewed for correctness." *State v. Hittle,* 2004 UT 46, ¶ 4, 94 P.3d 268 (internal quotation marks omitted). The correctness standard for reviewing the lawfulness of the underlying plea operates in most instances to neutralize the abuse of discretion standard for rulings on motions to withdraw pleas. This is because an appellate determination of sentencing-court-strict-compliance error will almost certainly rise to the level of an abuse of discretion in the instance when a sentencing court denies a motion to withdraw a plea

that was not accompanied by strict compliance with constitutional and procedural requirements. The interpretation of just what amounts to sentencing-court conduct that implicates the "ultimate question" and thereby triggers nondeferential review for correctness will, as we will disclose shortly, directly influence our determination that the court of appeals' holding must be reversed.

¶ 9 Finally, we note that on certiorari we review the decision of the court of appeals and not the sentencing court. We disagree with the court of appeals' view that rule 11 imposed additional investigatory requirements on the sentencing judge concerning Mr. Beckstead's ability to enter a knowing and voluntary guilty plea and therefore reverse.

## ANALYSIS

¶ 10 Rule 11 of the Utah Rules of Criminal Procedure requires that guilty pleas be accepted only from defendants who understand the rights they surrender by pleading guilty and who voluntarily waive those known rights. *State v. Benvenuto,* 1999 UT 60, ¶ 11, 983 P.2d 556. The responsibility for assuring that a defendant's guilty plea meets this standard falls upon the sentencing judge. In carrying out his responsibilities, a sentencing judge is guided by the detailed inventory of rights that a defendant will waive if his guilty plea is accepted. These rights are contained within the text of rule 11. Over time we have made clear that a sentencing judge must communicate to a defendant the full complement of information found in rule 11 concerning the rights he is relinquishing by pleading guilty. The sentencing judge must then receive from the defendant an affirmation that he committed the offense to which he is pleading guilty, that he knows of and understands the rights he is surrendering, and that his plea is voluntary. The dialogue that occurs between the sentencing judge and a defendant when a guilty plea is offered, commonly known as the plea colloquy, provides an opportunity for the sentencing judge to assess not only the verbal content of the defendant's responses, but also the entire

spectrum of verbal and nonverbal behavior that comprises his presence before the judge.

¶ 11 We have traditionally granted sentencing courts substantial discretion to employ methods tailored to determine whether a specific guilty plea is knowing and voluntary. We have stated that such a determination "does not mandate a particular script or rote recitation.... [T]he substantive goal of rule 11 is to ensure that defendants know of their rights and thereby understand the basic consequences of their decision to plead guilty. That goal should not be overshadowed or undermined by formalistic ritual." *State v. Visser*, 2000 UT 88, ¶ 11, 22 P.3d 1242.

¶ 12 The court of appeals held that the sentencing judge did not make sufficient inquiry into Mr. Beckstead's possible alcohol-induced impairment and therefore had an inadequate factual basis upon which to support its ultimate finding that his guilty plea was knowing and voluntary. Although the court of appeals does not tie its holding to a particular standard of review, we assume that it believed its holding touched on the "ultimate question" of compliance with the constitutional and procedural requirements for the entry of a plea and was therefore subject to correctness review. Using this approach, one that focused its review on the plea hearing rather than on the motion to set aside the plea, the court of appeals was able to bypass review of the propriety of the sentencing court's ruling on Mr. Beckstead's motion to withdraw his plea, a ruling that was owed considerable deference.

¶ 13 To the extent that the court of appeals applied a correctness standard to the sentencing court's ruling, it erred. The court of appeals grounded its holding on the "inadequate factual basis" relied on by the sentencing court to conclude that Mr. Beckstead was not impaired when he entered his guilty plea. The court's rationale has all of the hallmarks of a sufficiency of the evidence challenge and therefore is well suited for review under a clearly erroneous standard.

¶ 14 Judge Davis's dissent takes proper note of the majority's faulty selection of standard of review when he observes that there is no support for the conclusion that the sentencing court's finding that Mr. Beckstead was not impaired was clearly erroneous. Only by transmuting the finding that Mr. Beckstead was not intoxicated into a default of the sentencing court's duty to strictly comply with rule 11 could the court of appeals' majority have denied deference to the sentencing judge's finding. Every finding of fact made by a sentencing court bearing on the question of whether a defendant's guilty plea was knowing and voluntary could be easily morphed into an issue of strict rule 11 compliance. The range of rule 11 matters subject to strict compliance is not so expansive that it engulfs all findings of fact. Rather, our understanding of strict compliance in the context of guilty plea review refers to a sentencing judge's duty to communicate comprehensively and without deviation the substantive information required to be imparted by rule 11. It does not, by contrast, extend to judgments made by a sentencing judge that relate to the knowing and voluntary character of a guilty plea. Those matters are subject to review for abuse of discretion.

¶ 15 We decline to judicially amend rule 11 to mandate additional minimum inquiries that a sentencing court must pursue when alerted that a defendant may be unable to enter a knowing and voluntary guilty plea. Such additions would increase the range of matters with which a sentencing judge would be required to strictly comply. This would be unwise.

¶ 16 While we agree that "[r]ule 11 counsels a [sentencing] court to make further inquiry into a defendant's competence to enter a guilty plea once the court has been informed that the defendant has recently ingested ... substances capable of impairing his ability to make a knowing and intelligent waiver of his constitutional rights," *United States v. Cole*, 813 F.2d 43, 46 (3d Cir.1987), we do not believe that such an inquiry must follow a specific line of questioning as mandated by the court of appeals. The court of appeals held that upon notice that a defendant may have alcohol in his system a sentencing judge must at a minimum inquire "into the amount of alcohol that [the defendant] had consumed [and] the amount of time

that had elapsed since his last drink." *State v. Beckstead,* 2004 UT App 338, ¶ 10, 100 P.3d 267. In our view, a mandated script would subvert the objective of encouraging the flexible probe of a defendant's competence that accompanies a meaningful engagement between judge and defendant.

¶ 17 The court of appeals' majority notes that there is a "well-known tendency of persons to understate their alcohol intake and level of intoxication to members of the justice system." *Id.* ¶ 8. It advances this observation in support of its belief that additional mandated judicial inquiry is in order to test the credibility of self-reporting. We are not confident, however, that the content of a defendant's verbal answers to a series of mandated questions would be any more reliable than a defendant's subjective evaluation of his cognitive condition. That is not to say that the court would be unable to glean other useful nonverbal information about a defendant's condition from further questioning. In this case, the sentencing judge placed considerable reliance on his observations of Mr. Beckstead's demeanor. Putting more questions to Mr. Beckstead about his drinking might have elicited additional nonverbal clues to his ability to enter a guilty plea, but so might other approaches.

¶ 18 When the evidence upon which the court must rely can be obtained by many means that may vary in efficacy depending on the situation, it is unnecessary and unwise to mandate one approach to the exclusion of others. What is necessary and mandated is that a meaningful engagement take place between the defendant and the court. Where a meaningful engagement does not take place, the court may well find itself unable to assemble sufficient facts upon which to make a judgment about a defendant's ability to enter a plea that would survive appellate review.

¶ 19 The specific questions identified by the court of appeals as the minimum inquiry required when evidence of impairment exists included questions about how much and when the alcohol was consumed. These questions are clearly appropriate. They may not, however, be the best questions to ask. Indeed, responses to questions on topics unrelated to alcohol may well provide better insights into a defendant's lucidity, as might a blood-alcohol test, or observations of the defendant's actions and demeanor unaided by dialogue. We therefore stop short of imposing any suggestion of a script upon sentencing judges to use when confronted with a potentially impaired defendant seeking to enter a guilty plea.

¶ 20 Instead, we encourage judges to employ techniques of uncovering facts relevant to a defendant's capacity to enter a plea that are the natural product of a meaningful engagement with that defendant. The facts elicited by these techniques will be critical to meaningful appellate review, a review that would be undertaken under a clearly erroneous standard. We therefore further encourage judges to record observations of relevant nonverbal conduct with a view toward preserving an adequate record in those cases where a defendant's ability to enter a knowing and voluntary plea may come into question.

¶ 21 We are satisfied that the circumstances surrounding the taking of Mr. Beckstead's plea met these standards and that the sentencing court did not abuse its discretion when it denied Mr. Beckstead's motion to withdraw his plea. The sentencing court conducted a thorough rule 11 colloquy. During this colloquy, the judge interacted repeatedly with Mr. Beckstead. The judge continued to interact with Mr. Beckstead when the issue of his sobriety was raised. At the hearing on the motion to withdraw the guilty plea, the judge reviewed a tape of the hearing to revisit his firsthand observations of Mr. Beckstead's behavior. He compared the behavior recorded on the tape with Mr. Beckstead's behavior and demeanor at the motion hearing when the judge knew he was sober. The sentencing judge properly exercised his discretion when he denied Mr. Beckstead's motion to withdraw his guilty plea, and accordingly, we reverse the court of appeals.

¶ 22 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice PARRISH concur in Justice NEHRING's opinion.