2020 UT App 148

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
BRANDON KEITH THOMPSON,
Appellant.

Opinion
No. 20190509-CA
Filed November 5, 2020

First District Court, Brigham City Department
The Honorable Brandon J. Maynard
No. 181100192

Ryan L. Holdaway and Diane Pitcher, Attorneys
for Appellant

Sean D. Reyes and Nathan Jack, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES KATE APPLEBY and RYAN M. HARRIS concurred.

CHRISTIANSEN FORSTER, Judge:

¶1    Brandon Keith Thompson appeals the district court's denial of his motion to withdraw his guilty plea to murder as well as the court's ruling binding him over on a charge of aggravated murder. We affirm.

## BACKGROUND

¶2    Following a confrontation, Thompson shot his unarmed roommate (Roommate) several times. One shot severed Roommate's femoral artery, causing him to quickly bleed to death. Thompson told police that at the time of the shooting, Roommate was charging at him up a flight of stairs and

threatening to kill him and that he was not aiming to hit Roommate but only to scare him so he would stop coming toward Thompson. The State charged Thompson with aggravated murder, possession of a firearm by a restricted person, and obstruction of justice.

¶3      At the preliminary hearing, Thompson argued that he should not be bound over on the aggravated murder charge, because his prior conviction for third-degree aggravated assault, on which the State relied to support the aggravated murder charge, could not serve as a predicate offense to elevate this homicide to aggravated murder. After examining the statutory language, the court rejected Thompson's argument and bound him over on the aggravated murder charge.

¶4      Initially, Thompson intended to argue that he acted in self-defense, and his attorneys were preparing a defense along those lines for trial. In the course of this preparation, however, Thompson's attorneys became increasingly concerned about their ability to prevail on a perfect self-defense theory in light of various weaknesses in the evidence. For example, although Thompson claimed that Roommate was charging him when he shot Roommate, none of Roommate's gunshot wounds were on the front of his body. Additionally, the location where Roommate's blood had pooled and the location of the bullet casings were inconsistent with Thompson's claim that he shot Roommate while he was charging up the stairs. Moreover, two hours elapsed between the shooting and the time the police were called, during which time Thompson attempted to discard the gun and Roommate's identification and also called several people. There were also various inconsistencies in Thompson's story that his attorneys were concerned might undermine his credibility.

¶5      In light of this evidence, Thompson's attorneys came to believe that the "best-case scenario at trial" would be a finding of "imperfect self-defense, which would have . . . reduce[d] the aggravated murder [charge] down to murder" but would not

have resulted in acquittal. They were also concerned that there was a real possibility Thompson "could be convicted of . . . aggravated murder."

¶6     Thompson's attorneys managed to negotiate a plea deal in which the State would drop Thompson's aggravated murder charge and allow him to plead guilty to murder, possession of a firearm by a restricted person, and obstruction of justice. Thompson's attorneys discussed the details and viability of Thompson's self-defense claims with him and explained the potential sentences he would face under each scenario. After discussing the matter with his attorneys, Thompson decided to accept the deal and plead guilty.

¶7     At the plea hearing, the court conducted a standard plea colloquy. Thompson confirmed that he understood the terms of the plea, that his plea was knowing and voluntary, and that by changing his plea to guilty, he was forgoing his right to present a defense. The prosecutor read the factual basis for the plea, and the court asked Thompson, "[I]s that what happened?" Thompson responded, "For the most part, yes." The court asked Thompson, "Okay, any clarifications you want to put on the record?" Thompson replied, "No."

¶8     At that point, Thompson's attorney stated that he wanted to "put on the record" that in Thompson's mind, "he was defending himself" and that the incident was not, "in his mind, an intentional murder." The attorney went on to clarify that Thompson "knowingly caused the death of the victim . . . , and that's why he's entering his plea because he thinks it's in his best interest to do so." The court then found that the facts supported the plea and that it was knowing and voluntary. Accordingly, it accepted Thompson's guilty plea.

¶9     Prior to sentencing, Thompson obtained new counsel and moved to withdraw his guilty plea. He argued that he was not adequately informed regarding self-defense and did not know the State had the burden of disproving a claim of self-defense;

that his attorneys falsely told him that he would serve only eleven years in prison with the plea bargain, despite the minimum sentence for his murder charge being fifteen years; and that he was coerced to plead guilty by threats of prosecution against his girlfriend.

¶10 The district court held an evidentiary hearing on Thompson's motion to withdraw his plea, at which Thompson and his former attorneys each testified. Following the hearing, the district court found counsel to be "much more credible" than Thompson. The court found that Thompson had been adequately informed regarding self-defense and his potential sentences and that Thompson had not been coerced into pleading guilty. Based on these findings, it determined that Thompson's plea was knowing and voluntary. Accordingly, the court denied Thompson's motion and proceeded to sentence him. Thompson now appeals.

ISSUES AND STANDARDS OF REVIEW

¶11 Thompson first asserts that his plea was not knowing and voluntary because he did not understand the State's burden to disprove self-defense, he was misinformed regarding the potential consequences of pleading guilty to murder, and his attorneys coerced him into pleading guilty. He further argues that the district court should have permitted him to withdraw his plea due to the court's alleged failure to adequately inquire into the self-defense claim asserted by his counsel at the plea hearing.

¶12 "We will overturn a sentencing court's ruling on a motion to withdraw a guilty plea only when we are convinced that the court has abused its discretion." *State v. Beckstead*, 2006 UT 42, ¶ 7, 140 P.3d 1288. In doing so, "[w]e review a district court's compliance with the constitutional and procedural safeguards surrounding the entry of a guilty plea for correctness," *State v. Collins*, 2015 UT App 214, ¶ 1, 359 P.3d 664, but "[w]e will

disturb findings of fact made in connection with a ruling on a motion to withdraw a guilty plea only if they are clearly erroneous," *Beckstead*, 2006 UT 42, ¶ 7.

¶13 Thompson also challenges the district court's bindover decision. "Bindover determinations are mixed questions of law and fact to which we grant some deference." *State v. Schmidt*, 2015 UT 65, ¶ 13, 356 P.3d 1204 (quotation simplified). But because the bindover determination turned on a question of statutory interpretation, we review it for correctness. *See State v. Lara*, 2003 UT App 318, ¶ 9, 79 P.3d 951.

ANALYSIS

I. The District Court Did Not Exceed Its Discretion in Denying Thompson's Motion to Withdraw His Plea

¶14 Thompson raises two arguments with respect to the court's denial of his motion to withdraw his plea. First, he asserts that the court erred in determining that his plea was knowing and voluntary. Second, he alleges that the court's inquiry into his claim of self-defense at the plea hearing was inadequate and that he should be permitted to withdraw his plea on the basis of that inadequacy. We reject both of Thompson's arguments.

A. Thompson Has Failed to Adequately Challenge the District Court's Factual Findings in Support of Its Determination That His Plea Was Knowing and Voluntary

¶15 The ultimate question to be determined in a motion to withdraw a plea is whether the defendant's plea was knowing and voluntary. *State v. Alexander*, 2012 UT 27, ¶ 23, 279 P.3d 371. In resolving that question, "the burden of proof is on the defendant, who must show that [the] plea was not knowingly and voluntarily made" by demonstrating "either that he did not

in fact understand the nature of the constitutional protections that he was waiving by pleading guilty, or that he had such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." *Id.* (quotation simplified).

¶16 On appeal, Thompson asserts that his plea was not knowing and voluntary because (1) he did not understand that the State would carry the burden of proof on his self-defense claim, (2) his attorneys misinformed him of the consequences of pleading guilty, and (3) his attorneys coerced him into pleading guilty. The district court addressed each of these claims in its ruling on Thompson's motion to withdraw his plea. The court found that "[h]aving weighed the contrasting testimonies of [Thompson] and his former counsel," counsel was "much more credible."

¶17 With respect to the self-defense claim, the court found that "former counsel thoroughly discussed and explained to [Thompson] . . . imperfect self-defense, perfect self-defense, and the viability of those defenses," that "former counsel took ample time to explain and present the realities of each option," and that Thompson "then took time to consider the issues and contemplate whether to take a plea."[1]

¶18 As to sentencing, the court found that "[f]ormer counsel thoroughly explained the potential sentences of 25-years-to-life or life-without-parole that [Thompson] was facing if convicted at

---

1. Although the court did not explicitly state that counsel had informed Thompson of the burden of proof, the court's finding that counsel's explanation was "thorough[]" can be reasonably construed as an implicit finding that counsel explained the burden of proof, particularly in light of the court's further finding that counsel's testimony, which included a representation that counsel had explained to Thompson "how the burden of proof works for self-defense claims," was credible.

trial"; that former counsel "presented and explained to [Thompson] the plea deal, which would instead subject him to a 15-years-to-life sentence"; and that Thompson "knew about and understood the different sentencing possibilities that could occur by going to trial or taking the plea" as well as the fact "that he was facing an indeterminate sentence." The court further found that although former counsel told Thompson about a similar case where a defendant was released after twelve years and also told him about potential "programs and opportunities" that might cause the parole board to grant him an early release, counsel "did not promise or create an expectation that [Thompson's] sentence would be reduced" or tell him that the parole board would not consider him a violent offender.

¶19    Finally, with respect to Thompson's claim of coercion, the court found that none of former counsel's "conversations or tone of voice were ever threatening or could be construed as forcing [Thompson] to do something he did not want to do." It also found that Thompson "was not coerced or threatened by the State or former defense counsel to accept a plea deal in order to avoid prosecution" of his girlfriend and that "[a]ny perceived notions that [he] was required to plea to avoid [his girlfriend] being prosecuted were solely a product of [Thompson's] own thoughts and misperception."

¶20    To successfully challenge a district court's factual findings on appeal, an appellant must "establish[] a basis for overcoming the healthy dose of deference owed to factual findings," generally by "identify[ing] and deal[ing] with supportive evidence" through the process of marshaling. *State v. Nielsen*, 2014 UT 10, ¶¶ 40–41, 326 P.3d 645. "[A] party challenging a factual finding . . . will almost certainly fail to carry its burden of persuasion on appeal if it fails to marshal." *Id.* ¶ 42. This is the case with Thompson.

¶21    Thompson does not address the basis of the court's findings or its credibility determinations. He does not analyze the actual statements and information the court had before it or

discuss whether that evidence was adequate to support its finding at the plea withdrawal hearing that the plea was knowing and voluntary. Further, in discussing the court's factual findings, Thompson merely attempts to reargue his position, relying solely on his own testimony at the plea withdrawal hearing to the exclusion of all other evidence supporting the court's findings—most notably, his former attorneys' testimony on which the court primarily relied.

¶22    Thompson's failure to engage with the evidence on which the district court relied precludes him from carrying his burden of persuasion to demonstrate that the court's findings were clearly erroneous or that the court exceeded its discretion in determining, based on those findings, that Thompson's plea was knowing and voluntary. Accordingly, we have no basis to conclude that the district court exceeded its discretion in denying Thompson's motion to withdraw his plea.

B.    Thompson Has Not Adequately Challenged the Court's Determination That There Was a Factual Basis to Support the Plea

¶23    Thompson next asserts that the court's inquiry at the plea hearing into his self-defense claim was insufficient and that the court therefore did not have enough information before it to ascertain whether there was an adequate factual basis for the plea. We agree with Thompson that when, as here, self-defense is put at issue before the court, the factual basis for a plea of guilty to first-degree murder must include the absence of self-defense. But Thompson has not adequately challenged the district court's finding that there was a factual basis to support his plea.

¶24    In *North Carolina v. Alford*, 400 U.S. 25 (1970), the U.S. Supreme Court suggested that "pleas coupled with claims of innocence should not be accepted unless there is a factual basis for the plea and until the judge taking the plea has inquired into and sought to resolve the conflict between the waiver of trial and

the claim of innocence." *Id.* at 38 n.10 (quotation simplified); *see also State v. Stilling*, 856 P.2d 666, 672 (Utah Ct. App. 1993). This approach furthers the goal of "insuring that guilty pleas are a product of free and intelligent choice." *Alford*, 400 U.S. at 38 n.10. Indeed, establishing a factual basis for the plea is an essential step in determining that the plea is knowing and voluntary because "[a] court cannot be satisfied that a guilty plea is knowing and voluntary unless the record establishes facts that would place the defendant at risk of conviction should the matter proceed to trial." *Willett v. Barnes*, 842 P.2d 860, 862 (Utah 1992); *see also State v. Breckenridge*, 688 P.2d 440, 443 (Utah 1983) (explaining that the lack of a factual basis for a guilty plea demonstrates that a defendant "did not understand the nature and elements of the crime to which he pled guilty").

¶25 Thompson asserts that a claim of self-defense is similar to a claim of innocence in that it alerts the court to the possibility that the defendant does not understand all the elements of the charge against them. Our supreme court has recently explained that because the absence of self-defense is an element that must be proved by the State, evidence that a defendant does not understand that element or the State's burden with respect to it can support a determination that a plea is not knowing and voluntary. *Arriaga v. State*, 2020 UT 37, ¶¶ 20, 29, 469 P.3d 914.

¶26 However, Thompson does not address the district court's finding that there was an adequate factual basis for the plea. Instead, he asserts that the court could not have had enough information to ascertain whether his plea was knowing and voluntary in the absence of further inquiry into his self-defense claim. As he puts it, "the failure of the district court to inquire further into [his] conflicting claims of innocence and guilt is sufficient alone to justify reversal and remand." But Thompson has pointed us to nothing suggesting that a particular form of inquiry into this conflict is constitutionally required or that the lack thereof establishes a standalone basis to withdraw a guilty plea.

¶27 Our plea withdrawal statute identifies a single ground that can support withdrawal of a guilty plea: "A plea of guilty or no contest may be withdrawn *only* upon leave of the court and a showing that it was not knowingly and voluntarily made."[2] Utah Code Ann. § 77-13-6 (LexisNexis 2017) (emphasis added). "This statutory standard mirrors the showing necessary for defendants to prove that their pleas are unconstitutional." *State v. Alexander*, 2012 UT 27, ¶ 19, 279 P.3d 371. A plea is knowing and voluntary when the defendant has "knowledge of the nature of the charges, of the constitutional rights being waived, and of the likely consequences of entering the guilty plea." *State v. Candland*, 2013 UT 55, ¶ 13, 309 P.3d 230; *see also Arriaga*, 2020 UT 37, ¶ 20 ("A defendant must understand the nature and elements of the offense to which the plea is entered, that upon trial the prosecution would have the burden of proving each of those elements beyond a reasonable doubt, and that the plea is an admission of all of those elements." (quotation simplified)).

¶28 While a court's failure to comply with certain procedures may be fatal to the extent that it demonstrates that the plea was unknowing or involuntary, such a failure is not alone sufficient to support a motion to withdraw a guilty plea. *See, e.g., Alexander*, 2012 UT 27, ¶¶ 25–26; *Bluemel v. State*, 2007 UT 90, ¶ 18, 173 P.3d 842. Our supreme court has "traditionally granted sentencing courts substantial discretion to employ methods tailored to determine whether a specific guilty plea is knowing and voluntary" and has "stated that such a determination does

---

2. Although a motion to withdraw a plea may be premised on a court's failure to find that there is a factual basis for the plea, such a failure is not an additional ground for withdrawing the plea but rather one facet of the requirement that a plea be knowing and voluntary. As our supreme court has explained, "[a] court cannot be satisfied that a guilty plea is knowing and voluntary unless the record establishes facts that would place the defendant at risk of conviction should the matter proceed to trial." *Willett v. Barnes*, 842 P.2d 860, 862 (Utah 1992).

not mandate a particular script or rote recitation." *State v. Beckstead*, 2006 UT 42, ¶ 11, 140 P.3d 1288 (quotation simplified). Thus, the appropriate analysis under the plea withdrawal statute is not whether the court completed a particular checklist but "whether there is evidence that [the defendant] knew of their constitutional rights and fully understood the charges." *Alexander*, 2012 UT 27, ¶ 25.

¶29 The court in this case found that there was a factual basis for the plea. Furthermore, following the plea withdrawal hearing, the court found that Thompson did indeed have a complete understanding of his self-defense claim and that his guilty plea—including his tacit admission that his conduct was not legally justified by self-defense—was knowing and voluntary. Apart from his general assertion that the court needed more information to reach this conclusion, Thompson has failed to explain why these findings were erroneous or why the evidence supporting them was insufficient. Thus, Thompson has not demonstrated that the district court exceeded its discretion in denying his motion to withdraw his guilty plea.

## II. The District Court Did Not Err in Its Bindover Decision on the Aggravated Murder Charge

¶30 Thompson next asserts that the district court erred in binding him over on the aggravated murder charge because his previous aggravated assault conviction could not serve as a predicate offense to support the aggravation element.[3]

---

3. Generally, a bindover ruling such as this could not be challenged on appeal unless the defendant preserved the right to appeal the issue as part of a plea agreement. *See State v. Sery*, 758 P.2d 935, 938 (Utah 1988) (explaining that unless the plea agreement "preserves [a pretrial] issue for appeal and allows withdrawal of the plea if the defendant's arguments" are successful on appeal, "a voluntary guilty plea is a waiver of the

(continued…)

¶31    Utah Code section 76-5-202(1)(j)(i) states that criminal homicide is aggravated murder if "the actor was previously convicted of . . . aggravated assault" under section 76-5-103(2) of the Utah Code. Utah Code Ann. § 76-5-202(1)(j)(i) (LexisNexis Supp. 2020). Subsection (2) of section 76-5-103 states,

> (a) Any act under this section is punishable as a third degree felony, except that an act under this section is punishable as a second degree felony if:
>
> > (i) the act results in serious bodily injury; or
> >
> > (ii) an act under Subsection (1)(b)(ii) [involving choking] produces a loss of consciousness.
>
> (b) Aggravated assault that is a violation of Section 76-5-210, Targeting a law enforcement officer, and results in serious bodily injury is a first degree felony.[4]

---

(…continued)
right to appeal all nonjurisdictional issues"). But the State addressed Thompson's bindover arguments on the merits and did not raise a preservation argument. Our supreme court recently explained that in situations like this, where an issue is unpreserved and the appellee does not brief the preservation issue, appellate courts have discretion to either "raise a preservation issue on our own initiative when it provides an alternative basis for affirmance" or "decide to address the matter on appeal despite the lack of preservation." *State v. Malo*, 2020 UT 42, ¶ 20 n.7, 469 P.3d 982. In this instance, we exercise our discretion to address this argument on the merits.

4. The parties agree that the language we quote here is the accurate statutory language. This language, however, was not

(continued…)

*Id.* § 76-5-103(2). Further details of what specific conduct constitutes aggravated assault are contained in subsection (1) of the same section.

¶32   Thompson asserts that the legislature intended for only second- and first-degree-felony aggravated assaults to constitute predicate offenses that can support an aggravated murder charge, since additional details of what constitutes those offenses are found in subsection (2) whereas all the details of what constitutes a third-degree felony are found in subsection (1). The State, on the other hand, asserts that all three felony levels constitute predicate offenses because all three are referenced in subsection (2). We agree with the State.

¶33   When interpreting a statute, "we look first to the best evidence of a statute's meaning, the plain language of the act," and "we do not look beyond a statute's plain language unless it

---

(…continued)

what appeared in the Utah Code statute books following the 2017 legislative session, in which this statute was amended by two separate bills. The 2017 publication of the Utah Code incorrectly limited the aggravated assault subsection referenced by the aggravated murder statute to aggravated assault targeting a police officer. *Compare* Utah Code Ann. § 76-5-103(2)–(3) (LexisNexis 2017), *with id.* § 76-5-103(2) (Supp. 2020). If the incorrect language appearing in the statute books had actually been correct, Thompson should not have been bound over on a charge of aggravated murder. The publication error was brought to the district court's attention in this case, and after examining the relevant language of the two statutory amendments, the district court ruled that bindover on the aggravated murder statute was warranted. While Thompson appeals that decision, he does not question the district court's analysis of the publication error and agrees with the State that the language we quote herein represents the accurate and applicable statutory language.

is ambiguous." *State v. McKinnon*, 2002 UT App 214, ¶ 6, 51 P.3d 729 (quotation simplified). Although Thompson asks us to examine legislative history in support of his arguments regarding the legislature's intent and also asks us to apply the rule of lenity, we are unable to do so in light of the unambiguous language in the statute. *See State v. Rasabout*, 2015 UT 72, ¶ 22, 356 P.3d 1258; *see also McKinnon*, 2002 UT App 214, ¶ 6.

¶34 The statute at issue in this case unambiguously includes all three levels of aggravated assault in subsection (2). And there is no reasonable basis for reading subsection (2) as pertaining only to second- and first-degree felonies and not to third-degree felonies. The underlying elements of all types of aggravated assault are contained in subsection (1). Subsection (2) then identifies the three potential felony levels that can apply to aggravated assault charges. In doing so, subsection (2) performs the same function with respect to all three levels—it identifies all elements required for each, some of which come from subsection (1), some of which are explicitly defined in subsection (2), and one of which comes from another statutory provision. None of these felonies is fully defined in the absence of subsection (1). Furthermore, subsection (1) does not define the felony level of any of the actions it outlines and does not refer specifically to third-degree-felony aggravated assault. Thus, there is no basis in the statutory language to determine that third-degree-felony aggravated assault falls within subsection (1) while the other two levels fall within subsection (2), as Thompson maintains. Rather, the most reasonable interpretation of the statutory language is that all levels of aggravated assault are addressed by subsection (2) and can therefore constitute predicate offenses for aggravated murder.

¶35 Accordingly, the district court did not err in binding Thompson over on the aggravated murder charge based on his previous aggravated assault conviction.

CONCLUSION

¶36    Thompson has failed to establish that the district court exceeded its discretion in determining that his plea was knowing and voluntary. Further, the court's alleged failure to adequately inquire into Thompson's self-defense claim does not provide an independent basis for him to withdraw his guilty plea. Finally, the court did not err in binding Thompson over on the aggravated murder charge.

¶37    Affirmed.

———————