**2022 UT App 14**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellant,
*v.*
JOEL CHANCE REDDEN,
Appellee.

Opinion
No. 20200700-CA
Filed January 27, 2022

Fifth District Court, Cedar City Department
The Honorable Keith C. Barnes
No. 191500842

Sean D. Reyes and Karen A. Klucznik, Attorneys
for Appellant

Gary W. Pendleton, Attorney for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which JUDGES
GREGORY K. ORME and RYAN D. TENNEY concurred.

POHLMAN, Judge:

¶1     Joel Chance Redden committed two domestic violence offenses in October 2019, and the district court entered judgment on those convictions in January 2020. In the present case, Redden was charged with violating a protective order in October 2019 when he allegedly called his former girlfriend ten times. Later, the State sought to amend the information to add new charges for violating the protective order, enhanced from class A misdemeanors to third degree felonies based on the domestic violence enhancement statute. Redden opposed the enhancement, arguing that the new crimes had to be committed after his January 2020 convictions. The magistrate agreed with Redden and bound him over for trial on the new charges as class A misdemeanors. The State now appeals, arguing that it could

enhance the charges so long as Redden is actually convicted of the new crimes within ten years after his January 2020 convictions. We agree with the State and therefore reverse.

## BACKGROUND[1]

¶2    Redden was subject to a protective order that prohibited him from contacting or communicating in any way with Michelle,[2] his former girlfriend. Notwithstanding this directive, Redden contacted Michelle on October 4, 2019, and threatened her. This conduct led the State to prosecute Redden in Weber County, and he pleaded guilty to stalking and violating a protective order, both third degree felonies. Redden entered his plea on December 4, 2019, and the judgment was entered on January 22, 2020 (the January 2020 convictions).

¶3    The present case arises out of Redden's conduct on October 9, 2019. At that time, Redden was jailed in Texas on unrelated charges, and Michelle was visiting Cedar City, Utah. Beginning at 8:34 a.m., Redden allegedly telephoned Michelle ten times over the next three hours. According to Michelle, she answered the second call, which was a collect call from Redden from the Texas jail. Michelle accepted the call and spoke to Redden briefly. She told him, "Just don't ever call me again," and hung up. She also answered one of Redden's later calls and recorded it, but she did not accept it to speak with him.

---

1. "At a preliminary hearing, the magistrate should view the evidence in a light most favorable to the prosecution and resolve all inferences in favor of the prosecution." *State v. Arghittu*, 2015 UT App 22, ¶ 2 n.2, 343 P.3d 709 (cleaned up). Because this appeal arises from a preliminary hearing, we recite the background facts with that standard in mind.

2. A pseudonym.

¶4     After Michelle reported these phone calls to law enforcement, the State filed an information against Redden in Iron County on December 30, 2019. It charged Redden with two counts of violation of a protective order for his October 9 conduct. It pursued both counts as third degree felonies enhanced from class A misdemeanors based on Redden's conduct underlying his January 2020 convictions. Yet the State did not present evidence of the January 2020 convictions at a May 2020 preliminary hearing, and consequently, Redden moved to reduce both counts to class A misdemeanors. Although the State moved to continue the hearing, the magistrate denied that request. The magistrate then agreed with Redden and found the State had not met its burden on enhancing the misdemeanors to felony charges, and the magistrate instead bound Redden over on the two counts as class A misdemeanors.[3]

¶5     The State next moved for leave to amend the information. While it would still pursue the two misdemeanor counts (Counts 9 and 10) that had already been bound over for trial, the State sought to include eight additional counts of violation of a protective order, which would be enhanced to third degree felonies based on Redden's prior convictions. Over Redden's objection, the magistrate allowed the State to amend the information.

¶6     At the preliminary hearing on the eight additional charges, the State presented evidence to support those eight counts. And unlike in the first preliminary hearing, the State included evidence of the January 2020 convictions. Still, Redden argued that the eight counts could be bound over only as misdemeanors because the January 2020 convictions did not qualify as "prior conviction[s]" to the eight alleged offenses

---

3. The State does not contest this bindover ruling on appeal.

committed on October 9, 2019. Relying on Utah Code section 77-36-1.1(2)(c)(ii)(B), which applies when "the individual is convicted of the domestic violence offense . . . within 10 years after the individual is convicted of a qualifying domestic violence offense," Utah Code Ann. § 77-36-1.1(2)(c)(ii)(B) (LexisNexis Supp. 2019), Redden asserted that to be enhanced to third degree felonies, the new offenses had to be *committed* within ten years *after* his January 2020 convictions. The State responded that even though "the prior conviction was for facts arising from October 4," the enhancement provision in Utah Code section 77-36-1.1(2)(c)(ii)(B) required only that Redden be *convicted* of the new crimes within ten years after his January 2020 convictions.

¶7 The magistrate agreed with Redden that the eight counts could not be enhanced to third degree felonies under the statute. He then determined that the State had presented sufficient evidence to establish probable cause "that the offenses of violation of [a] protective order were committed in eight instances." Accordingly, the magistrate bound Redden over for trial on all ten counts as class A misdemeanors.

¶8 In light of the magistrate's decision finding no probable cause that Redden had committed the eight third-degree felonies as charged in the amended information, the State "decline[d] to file a second amended information bringing the charges in line with the Court's findings." Instead, it moved to dismiss all charges in lieu of amending the information.

¶9 The magistrate granted the State's request and dismissed all charges against Redden. The two original misdemeanor charges were dismissed pursuant to rule 25(a) of the Utah Rules of Criminal Procedure, and the eight additional charges were

dismissed pursuant to rule 7B(c).[4] The State now appeals the order of dismissal. *See* Utah Code Ann. § 77-18a-1(3)(a) (LexisNexis 2017) ("The prosecution may, as a matter of right, appeal from . . . (a) a final judgment of dismissal, including a dismissal of a felony information following a refusal to bind the defendant over for trial . . . ."); *id.* § 78A-4-103(2)(e) (2018) (providing that the Utah Court of Appeals has jurisdiction over appeals from criminal cases not involving first degree felonies).

## ISSUES AND STANDARDS OF REVIEW

¶10 The State contends that the magistrate misinterpreted the enhancement statute when he refused to bind Redden over on the eight counts as third degree felonies. The decision to bind over a criminal defendant for trial typically presents a mixed question of law and fact to which we grant some deference to the magistrate. *See State v. Prisbrey*, 2020 UT App 172, ¶ 18, 479 P.3d 1126. But because the bindover decision here turned on a question of statutory interpretation, we review it for correctness. *See State v. Thompson*, 2020 UT App 148, ¶ 13, 476 P.3d 1017.

¶11 Rather than defending the magistrate's decision on its merits, Redden contends that this court lacks jurisdiction over

---

4. Rule 25(a) states, "In its discretion, for substantial cause and in furtherance of justice, the court may, either on its own initiative or upon application of either party, order an information or indictment dismissed." Utah R. Crim. P. 25(a). Rule 7B(c) provides, "If the magistrate does not find probable cause to believe the crime charged has been committed or the defendant committed it, the magistrate must dismiss the information and discharge the defendant. The magistrate may enter findings of fact, conclusions of law, and an order of dismissal. The dismissal and discharge do not preclude the state from instituting a subsequent prosecution for the same offense." *Id.* R. 7B(c).

the State's appeal, asserting that the State was not entitled to appeal from a dismissal order entered at its own request. "Whether appellate jurisdiction exists is a question of law which we decide in the first instance." *State v. Arghittu*, 2015 UT App 22, ¶ 12, 343 P.3d 709 (cleaned up).

## ANALYSIS

### I. The State's Argument on Appeal

¶12 The State argues that the magistrate erred in determining that the domestic violence enhancement statute did not apply to the eight additional counts that it raised in the amended information. According to the State, it could enhance those charges from class A misdemeanors to third degree felonies so long as Redden is ultimately convicted on the charges within ten years after his January 2020 convictions. Thus, the State argues, "until and unless the State fails to convict Redden of the new domestic violence charges before January 22, 2030, the [statute] allows the State to prosecute the new charges as third-degree felonies." We agree.

¶13 When we interpret a statute, "we look first to the best evidence of a statute's meaning, the plain language of the act, and we do not look beyond a statute's plain language unless it is ambiguous." *State v. Thompson*, 2020 UT App 148, ¶ 33, 476 P.3d 1017 (cleaned up). "Wherever possible, we give effect to every word of a statute, avoiding any interpretation which renders parts or words in a statute inoperative or superfluous." *State v. Stewart*, 2018 UT 24, ¶ 12, 438 P.3d 515 (cleaned up).

¶14 The crime that Redden is alleged to have committed—violating a protective order—is a class A misdemeanor but is subject to increased penalties in accordance with the domestic violence enhancement statute. *See* Utah Code Ann. § 76-5-108

(LexisNexis Supp. 2019). That enhancement statute states, in relevant part,

> (2) An individual who is convicted of a domestic violence offense is: . . .
>
> (c) guilty of a felony of the third degree if:
>
> (i) the domestic violence offense described in this Subsection (2) is designated by law as a class A misdemeanor; and
>
> (ii)(A) the domestic violence offense described in this Subsection (2) *is committed* within 10 years after the individual is convicted of a qualifying domestic violence offense that is not a criminal mischief offense; *or*
>
> (B) the individual *is convicted* of the domestic violence offense described in this Subsection (2) within 10 years after the individual is convicted of a qualifying domestic violence offense that is not a criminal mischief offense.

*Id.* § 77-36-1.1 (emphases added). As we read this plain language, section 77-36-1.1(2)(c) allows the State to enhance a class A misdemeanor charge to a third degree felony when a defendant either "commit[s]" *or* "is convicted of" the current crime "within 10 years after" the defendant "is convicted of a qualifying domestic violence offense." *Id.* Thus, we agree with the State's reading of the statute. Redden, tellingly, has not offered an alternative interpretation.

¶15 Further, we agree with the State's application of the statute to this case. The parties do not dispute that Redden's

January 2020 convictions constitute "a qualifying domestic violence offense" under the statute.[5] Because it is still possible that Redden could be "convicted of" the eight current charges "within 10 years" after he was convicted of qualifying domestic offenses in January 2020, section 77-36-1.1(2)(c)(ii)(B) permits the State to enhance the eight counts to third degree felonies. The magistrate erred in concluding otherwise. The magistrate appears to have reasoned that subsection 77-36-1.1(2)(c)(ii)(B) applies only if the defendant's current charges stem from conduct that occurred *after* the defendant was convicted of the qualifying domestic offense. But this interpretation would render subsection 77-36-1.1(2)(c)(ii)(A) superfluous because that subsection expressly addresses such circumstances—when the current offense "is committed" after the conviction on the qualifying domestic offense. We will not read the statute in a way that would conflate both subsections and make one subsection inoperative. *See Stewart*, 2018 UT 24, ¶ 12.

¶16    In sum, we conclude that for the enhancement under subsection 77-36-1.1(2)(c)(ii)(B) to apply, the State has until January 22, 2030, to obtain a conviction against Redden for the eight counts. We therefore reverse the magistrate's decision binding Redden over on these counts as class A misdemeanors and direct that Redden be bound over on them as third degree felonies.

---

5. As used in the statute, the term "domestic violence offense" includes "commission or attempt to commit" stalking and violating a protective order when committed "by one cohabitant against another." Utah Code Ann. § 77-36-1(4)(j), (*l*) (LexisNexis Supp. 2019). The term "cohabitant" includes, among other things, individuals who "reside[] or [have] resided in the same residence" or who are or were "in a consensual sexual relationship." *Id.* § 77-36-1(1); *id.* § 78B-7-102(2)(f), (g) (2018).

## II. Redden's Procedural Arguments

¶17 While Redden concedes that the State's reading of the enhancement statute is appropriate, he nevertheless argues that the State's appeal is improper, given that the State itself moved for the order of dismissal. In Redden's view, the State could have petitioned for interlocutory review of the magistrate's second bindover decision, but it was not allowed to "circumvent the appellate court's discretion to grant or deny petitions for review by requesting a dismissal and then relying on the statutory provision granting [the] prosecution an appeal of right from a final judgment of dismissal."[6] Redden thus asserts that this court does not have jurisdiction over this appeal.

¶18 Redden's argument is foreclosed by precedent. In *State v. Gomez*, 722 P.2d 747 (Utah 1986), the trial court agreed with the defendant that the charges should be reduced to a lesser offense. *Id.* at 748. In response, the State refused to amend the information to conform to the court's ruling and instead urged the court to dismiss the information. *Id.* The court then dismissed the information and the State appealed that dismissal. *Id.* at 748–49. On appeal, the Utah Supreme Court addressed the defendant's threshold argument that the State could not use the order of dismissal, which the State itself requested, as a means of obtaining review of "a decision that would not otherwise be appealable as a matter of right." *Id.* at 749. The supreme court

---

6. Rule 5 of the Utah Rules of Appellate Procedure sets forth the procedure regarding discretionary appeals from interlocutory orders. The Utah Code allows the prosecution an appeal, as a matter of right, from a final judgment of dismissal. Utah Code Ann. § 77-18a-1(3)(a) (LexisNexis 2017) ("The prosecution may, as a matter of right, appeal from . . . (a) a final judgment of dismissal, including a dismissal of a felony information following a refusal to bind the defendant over for trial . . . .").

explained that "the trial court's determination that the charges should be reduced to an offense carrying a lesser penalty not charged in the original information prevented the State from proceeding on the original charges." *Id.* Importantly, "[t]he effect of the trial court's ruling was to block prosecution and, in effect, to dismiss the original charges." *Id.* The supreme court concluded that, under these circumstances, "the State properly suggested that the trial court formally dismiss the information and then appealed from a final judgment of dismissal." *Id.* (cleaned up). This court reached the same conclusion on similar facts in *State v. Arghittu*, 2015 UT App 22, 343 P.3d 709. *Id.* ¶¶ 15–17 & n.4 (allowing the State to appeal after it had voluntarily moved for dismissal after the magistrate bound the defendant over on only a lesser and uncharged offense).[7]

¶19   Like *Gomez*, the magistrate's decision binding Redden over on eight new misdemeanors rather than the charged eight third-degree felonies had the "effect of . . . block[ing] prosecution and . . . dismiss[ing] the [eight] original charges." *See Gomez*, 722 P.2d at 479. The State therefore acted properly in moving to dismiss the information and then appealing from "a final judgment of dismissal." *See* Utah Code Ann. § 77-18a-1(3)(a)

---

7. Redden relies on *State v. Waddoups*, 712 P.2d 223 (Utah 1985), to support his position. In that case, the trial court granted a defense motion to suppress certain evidence, and the State chose to dismiss the information and attempted to appeal the dismissal in order to challenge the suppression ruling. *Id.* at 223. The supreme court concluded that the State's appeal was improper under those facts. *Id.* at 224. The case at hand, however, is much more like *Gomez* than *Waddoups*, and Redden overlooks that the supreme court in *Gomez* specifically decided that the facts of *Waddoups* were "quite different" given that *Waddoups* did not involve the trial court reducing the original charges. *See State v. Gomez*, 722 P.2d 747, 749 (Utah 1986).

(LexisNexis 2017) ("The prosecution may, as a matter of right, appeal from . . . (a) a final judgment of dismissal, including a dismissal of a felony information following a refusal to bind the defendant over for trial . . . ."); *see also Gomez*, 722 P.2d at 479; *Arghittu*, 2015 UT App 22, ¶¶ 15–17. Thus, Redden's challenge to appellate jurisdiction is unavailing.

¶20   Lastly, in two ways, Redden challenges the fairness of the State's actions. He first suggests that the State's filing of the eight new charges against him violated the principles set forth in *State v. Brickey*, 714 P.2d 644 (Utah 1986). In *Brickey*, the Utah Supreme Court held that a prosecutor is prohibited from "*refiling* criminal charges earlier dismissed for insufficient evidence unless the prosecutor can show that new or previously unavailable evidence has surfaced or that other good cause justifies refiling." *Id.* at 647 (emphasis added). Redden's reliance on *Brickey* is misplaced, however, because no charges have been *refiled* against him. Rather, the State amended the information to add eight *new* charges that had not been addressed at the first preliminary hearing. The rules of criminal procedure allow such amendments "at any time before trial has commenced so long as the substantial rights of the defendant are not prejudiced." Utah R. Crim. P. 4(d). The court also held a second preliminary hearing to address the eight additional charges. *See id.* ("If an additional or different offense is charged, the defendant has the right to a preliminary hearing on that offense . . . ."). Moreover, as the United States Supreme Court has recognized, a prosecutor's initial charging decision "should not freeze future conduct" and "does not necessarily define the extent of the legitimate interest in prosecution." *United States v. Goodwin*, 457 U.S. 368, 380, 382 (1982); *accord State v. Finlayson*, 2014 UT App 282, ¶ 23 n.11, 362 P.3d 926.

¶21   Second, Redden generically complains that he pleaded guilty to the charges in Weber County as "a global resolution of the charges" related to Michelle and that he did not realize the

resulting convictions "would later be asserted as a basis for enhancing additional charges" filed in Iron County. Although he suggests that his due process rights have therefore been violated, he has not established his lack of understanding as a factual matter. Nor has he established that he was not actually afforded all the process to which he was entitled under the law.

¶22 For the foregoing reasons, Redden's counterarguments are unpersuasive.

CONCLUSION

¶23 Having rejected Redden's contention that we lack jurisdiction over this appeal, we conclude that the State's appeal is well taken and that the magistrate erred in binding Redden over on the eight new counts as class A misdemeanors. Accordingly, we reverse the magistrate's bindover and dismissal orders and remand for further proceedings consistent with this opinion.

––––––––––