Heber D. NELSON and Carol K. Nelson,
Plaintiffs and Respondents,

v.

Richard W. STOKER and Lanae S. Stoker,
his wife; Tom Darnell and Diane Trus-
cott; Ray Quintana, dba Silver Way;
The State of Utah Dept. of Social Serv-
ices and Patricia Kunz, Defendants and
Appellants.

No. 18244.

Supreme Court of Utah.

Aug. 1, 1983.

Alan D. Frandsen, Thomas N. Crowther, Ted Cannon, Randall L. Skeen, Salt Lake City, for defendants and appellants.

Dwight L. King, Salt Lake City, for plaintiffs and respondents.

DURHAM, Justice:

This is an action to foreclose a trust deed and note which secure monies loaned to purchase certain real property. The trial court held that the trust deed and note had a priority superior to that of a prior judgment lien. We affirm.

In March of 1978, the plaintiffs Heber and Carol Nelson purchased a parcel of real property in Salt Lake County. In conjunction with that purchase, the plaintiffs executed a deed of trust and note for $40,700 naming Western Mortgage Loan Corporation (hereafter "Western Mortgage") as the beneficiary. The trust deed and note were recorded on March 29, 1978.

On May 1, 1979, the plaintiffs conveyed the real property by warranty deed to the defendants Richard and LaNae Stoker. In exchange for the real property, the Stokers agreed to make the payments on Western Mortgage's trust deed and note. In addition, as part of the purchase price, on May 1, 1979, the Stokers executed a trust deed and note for $8,464.76 naming Heber Nelson as the beneficiary. The warranty deed shows that it was recorded at 12:35 p.m. on June 5, 1979, and bears a county recorder's number of 3289485. The trust deed shows that it was also recorded at 12:35 p.m. on June 5, 1979, and bears a county recorder's number of 3289486. The Stokers made no down payment and only one monthly payment.

Prior to the conveyance of the real property by the plaintiffs to the Stokers, several outstanding judgments existed against Richard Stoker. The plaintiffs were cognizant of these outstanding judgments. The defendant Ray Quintana dba Silver Way has a judgment against Richard Stoker dated January 13, 1977, in the approximate amount of $1,400. In addition, defendants the State of Utah Department of Social Services (hereafter "State") and Patricia Kunz have a judgment against Richard Stoker dated February 23, 1979, in the amount of $21,610. The latter judgment was taken against Richard Stoker for unpaid child support.

The Stokers defaulted on their payments and the plaintiffs initiated foreclosure proceedings against the real property. The plaintiffs filed a complaint seeking a declaration by the trial court that their trust deed and note created a lien superior to all claims except Western Mortgage's trust deed and note. On summary judgment, the trial court concluded that the "[p]laintiffs should be granted a priority ahead of the other interests in the property ... and subject only to the Trust Deed of Western Mortgage Loan Company." The State appeals that decision.

## I.

Before we may address the issue of whether the trial court erred in ruling that the plaintiffs' lien had priority over the State's judgment lien, we must determine whether this Court has jurisdiction pursuant to Rule 73(a) of the Utah Rules of Civil Procedure. The State's notice of appeal was filed prematurely. On January 29, 1982, by minute entry, the trial court granted the plaintiffs' motion for summary judgment, thereby establishing the priority of the plaintiffs' lien over the State's judgment lien. The State filed a notice of appeal on February 8, 1982. The trial court's written Findings of Fact, Conclusions of Law and Judgment were not executed and docketed until March 10, 1982.

Rule 73(a) of the Utah Rules of Civil Procedure requires an appellant to file a notice of appeal with the trial court within "one month from the date of the entry in the Register of Actions of the judgment or order appealed from ...." Timely notice of appeal is jurisdictional. *See, e.g., Armstrong Rubber Co. v. Bastian,* Utah, 657 P.2d 1346 (1983); *Bowen v. Riverton City,* Utah, 656 P.2d 434 (1982). However, with respect to the premature filing of a notice of appeal, this Court has stated:

> The premature filing of the notice of appeal such as was done in this case should not be regarded as a defect which will ipso facto entirely deprive the appellate court of jurisdiction. It is an irregularity which would be grounds for dismissal of the appeal within the discretion of the court.

*Wood v. Turner,* 18 Utah 2d 229, 231, 419 P.2d 634, 635 (1966) (notice of appeal was filed four days prior to entry of the formal written judgment).

Rule 4(a) of the Federal Rules of Appellate Procedure, after which our Rule 73 was modeled, was amended in 1979 to reflect the practice of the federal courts which followed a rule similar to that enunciated in the *Wood* case. That amendment reads as follows:

> Except as provided in (a)(4) of this Rule 4, a notice of appeal filed after the announcement of a decision or order but before the entry of the judgment or order

shall be treated as filed after such entry and on the day thereof.

Fed.R.App.P. 4(a)(2). The Notes of the Advisory Committee on Appellate Rules states:

Note on Subdivision (a)(2). The proposed amendment to Rule 4(a)(2) would extend to civil cases the provisions of Rule 4(b), dealing with criminal cases, designed to avoid the loss of the right to appeal by filing the notice of appeal prematurely. Despite the absence of such a provision in Rule 4(a) the courts of appeals quite generally have held premature appeals effective.

(Citations omitted).

The *Wood* decision remains good law and reflects the great weight of authority, and we reaffirm our holding therein. *See* Fed.R.App.P. 4(a)(2); 9 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 204.14 (1982 & Supp.1982–83). As we stated in the *Wood* case:

The final written judgment which was filed is exactly in accord with the ruling appealed from. We cannot see that the defendant was put to any disadvantage or that his rights were adversely affected by the irregularity of procedure here.

*Wood v. Turner, supra* at 231–32, 419 P.2d at 635. *Accord Lemke v. United States,* 346 U.S. 325, 74 S.Ct. 1, 98 L.Ed. 3 (1953). Our holding is further buttressed by policy considerations which recognize the difficulty of knowing when a judgment is executed and docketed. Under Utah law, the court has no obligation to inform the parties or their counsel when execution and docketing have occurred. We are of the opinion that the ends of justice will best be served by hearing the case on the merits.[1]

## II.

The State urges that the trial court erred in declaring that the plaintiffs' lien was entitled to a priority superior to the State's judgment lien. The State contends that a judgment lien docketed pursuant to the Public Support of Children Act, U.C.A., 1953, §§ 78–45b–1 to –22 (1977 & Interim Supp.1983) takes priority over and is superior to all other liens, including a purchase money mortgage. *See Gray v. Kappos,* 90 Utah 300, 61 P.2d 613 (1937) (defining a purchase money mortgage). We disagree.

The overwhelming weight of authority recognizes the special priority accorded a vendor's purchase money mortgage.[2] This Court has also acknowledged that priority. *See Kemp v. Zions First National Bank,* 24 Utah 2d 288, 470 P.2d 390 (1970). In addition, the Utah Legislature has by statute granted a special priority to certain purchase money interests. *See, e.g.,* U.C.A., 1953, §§ 70A–9–107, –312 & –313 (giving special protection and priority to a purchase money security interest).

Whether a vendor's security interest is represented by a trust deed or a mortgage is irrelevant to the applicability of the general rule:

A change in the form of the security for the purchase-money, as from a mortgage to a deed of trust, will not change the character of the debt. The consideration continues to be purchase-money.

1 L. Jones, *supra* note 2, § 584 at 798 (citations omitted). *See also* 8A G. Thompson,

---

1. *U–M Investments v. Ray,* Utah, 658 P.2d 1186 (1982) is distinguishable from the Wood v. Turner decision and the present case. The U–M Investments decision held that under Rule 73(a) of the Utah Rules of Civil Procedure a notice of appeal is ineffective if filed prior to a trial court's disposition of a post judgment motion under Rule 59(a)(6) of the Utah Rules of Civil Procedure. The present case, as well as the Wood v. Turner decision, did not involve any post judgment motions.

2. *See, e.g.,* IV American Law of Property § 16.106E (1952); II G. Glenn, Glenn on Mortgages §§ 345.1 & 345.2 (1943); 1 L. Jones, Jones on Mortgages §§ 583–587 (8th ed. 1928); G. Osborne, G. Nelson & D. Whitman, Real Estate Finance Law § 9.1 (1979) (hereafter "G. Osborne"); 2 R. Patton & C. Patton, Patton on Land Titles § 491 (2d ed. 1957 & Supp.1981); 3 R. Powell, Powell on Real Property ¶ 453 (1981); 8A G. Thompson, Thompson on Real Property § 4423 (1963 & Supp.1981); 5 H. Tiffany, Tiffany on Real Property § 1462 (3d ed. 1939 & Supp.1982); Note, *Priority of Purchase-Money Mortgages,* 29 Va.L.Rev. 491 (1943).

*supra* note 2, § 4423 at 204. Thus, for the sake of simplicity, we refer to the term "purchase money mortgage" as encompassing both mortgages and trust deeds which are given by a vendee to secure a purchase price or unpaid balance.

The general rule has been stated as follows:

> In most states, if the purchaser of land, upon receiving a conveyance thereof, as part of the same transaction executes a mortgage to the vendor to secure a part or the whole of the purchase price, such mortgage, to the extent to which it actually secures purchase money, is entitled to priority over any preexisting claims, which may be asserted in favor of another person against such land as the property of the purchaser, at least in the absence of an agreement between the parties subordinating the purchase money mortgage to other liens or claims. The vendor is under no obligation to examine the records to discover such claims ...

5 H. Tiffany, *supra* note 2, § 1462 at 460–61 (citations omitted). A leading treatise likewise states:

> It is familiar learning that a purchase money mortgage, executed at the same time as the deed of purchase of land, or in pursuance of agreement as part of one continuous transaction, takes precedence over any other claim or lien attaching to the property through the vendee-mortgagor. This is so even though the claim antedates the execution of the mortgage to the seller. . . .
>
> One of the frequent and important instances of its superiority is over liens arising under judgments against the grantee-mortgagor under a judgment obtained and docketed or recorded before the purchase money mortgage is executed.·

IV American Law of Property, *supra* note 2, § 16.106E at 220–21 (citations omitted). Another leading authority comments as follows:

> This rule, of course, is not confined to judgments and attachments; on the contrary, it extends to all liens legal or equitable, that otherwise might clasp the land at and with its acquisition by the mortgagor. All such liens, indifferently, yield to the purchase money mortgage.

II G. Glenn, *supra* note 2, § 345.1 at 1440 (citations omitted).

The policy behind giving a vendor holding a purchase money mortgage priority over a preceding judgment lien creditor of the vendee has been stated as follows:

> As against judgment lien creditors [the purchase money mortgagee] should win because [judgment lien creditors] have not extended their credit in reliance on the right to be repaid out of *any* specific property, much less out of property previously owned by another and coming to the debtor unpaid for, with the seller of it relying upon that very property he has parted with for his payment. Furthermore, their judgments are obtained before their debtor receives the property to which it attaches on acquisition so they could not have relied upon it in getting their judgment lien. In such a case the general rule that such creditors' rights should rise no higher than their debtors' seems clearly appropriate.

G. Osborne, *supra* note 2, § 9.1 at 577.

■ Equity and justice justify the protection afforded a vendor who parts with his property on the faith that his mortgage or trust deed securing purchase monies loaned to the vendee is entitled to priority over any preexisting claims which may be asserted against the vendee-mortgagor. To grant a preexisting judgment lien creditor a preference over a vendor's purchase money mortgage would be to bestow on that judgment lien creditor a pure windfall at the expense of a vendor. Thus, in accord with the overwhelming weight of authority, we hereby adopt and follow the doctrine that grants a special priority to purchase money mortgages.

■ However, before we may apply the general rule and give the plaintiffs' trust deed priority over the State's judgment lien, it must be established that the plaintiffs do in fact hold a purchase money

mortgage. That determination is based on the parties' intent as inferred from their actions. *See* authorities cited, *supra* note 2. The test has been stated as follows:

> The real test is not whether the deed and mortgage were in fact executed at the same instant, or even on the same day, but whether they were parts of one continuous transaction, and so intended to be, so that the two instruments should be given contemporaneous operation in order to promote the intent of the parties.

Note, *supra* note 2, at 492 (quoting *Stewart v. Smith,* 36 Minn. 82, 30 N.W. 430 (1886)). *See also* authorities cited, *supra* note 2. "Concurrent dates of execution are strong presumptive evidence of this common intent; and the case can be fortified still further by the fact that the deed and mortgage were recorded on the same day." II G. Glenn, *supra* note 2, § 345.2 at 1441–42 (citation omitted). The record demonstrates that the plaintiffs executed the warranty deed and that the Stokers executed the trust deed and note on May 1, 1979. The record also discloses that the warranty deed and trust deed were recorded simultaneously on June 5, 1979. The uncontroverted facts in the record show that the "Trust Deed executed by [the Stokers] was given to secure a Trust Deed Note in the face amount of $8,464.76, *representing the purchase price of the property described in the Trust Deed.*" (Emphasis added). Based on these facts, we hold that the plaintiffs' trust deed is a purchase money mortgage. The general rule therefore applies and the plaintiffs' trust deed is entitled to a priority superior to the State's preexisting judgment lien.

Notwithstanding the applicability of the general rule, the State contends that U.C.A., 1953, §§ 78–45b–1 to –22 (1977 & Interim Supp.1983) provide an exception to the general rule and renders its judgment lien superior to the plaintiffs' trust deed. The State bases its claim of superiority on the language of U.C.A., 1953, § 78–45b–9(1), which provides: "This lien shall have the same preference against the assets of that debtor as claims for taxes." The State relies on *Union Central Life Insurance Co.*

*v. Black,* 67 Utah 268, 247 P. 486 (1926), for the proposition that tax liens are superior to preexisting mortgage liens upon real property. However, the *Union Central* decision only holds that a *personal property* tax lien filed against the real property of the owner of the personalty is superior or prior in right to a mortgage lien on the realty which antedates the assessment and levy of the tax on the personal property. Without addressing the soundness of that 1926 decision, we point out that that decision does not hold, explicitly or implicitly, that *all* tax liens are given a special priority.

In claiming a preference for its child support judgment identical to that given tax liens, the State argues that it is entitled to a "super priority." The State has failed, however, to point to any authority that holds that all tax liens are granted a special priority. In fact, some tax liens are not granted a special priority, but rather are given a priority similar to that of a judgment lien. *See, e.g., Phillips Petroleum Co. v. Wagstaff,* 22 Utah 2d 177, 450 P.2d 100 (1969). Even federal tax liens are not given a special priority over some transactions such as purchase money mortgages. *See* 5 J. Rabkin & M. Johnson, *Federal Income, Gift and Estate Taxation* § 73.-06B(3) at 7337C–37D (1982) (citing Rev.Rul. 68–57, C.B. 1968–1 at 553). Thus, absent an express legislative directive, we will not infer an intent to give the State's judgment lien obtained under the Public Support of Children Act an extraordinary priority. Rather, a fair reading of the Act leads us to conclude that it only grants a priority to the State's judgment lien similar to lowest priority given to a tax lien—that of an ordinary judgment lien.

The State relies on § 78–45b–1.1 as requiring a liberal interpretation of the statute. In pertinent part, § 78–45b–1.1 provides:

> It is declared to be the public policy of this state that this chapter be liberally construed and administered to the end *that children shall be maintained from the resources of responsible parents,*

thereby relieving or avoiding, at least in part, the burden often borne by the general citizenry through welfare programs. U.C.A., 1953, § 78–45b–1.1 (emphasis added). The main purpose of the Public Support of Children Act is to assure that noncustodial parents honor court-ordered support obligations with respect to their minor dependent children. *See generally Knudson v. Utah State Department of Social Services,* Utah, 660 P.2d 258 (1983). In that pursuit, the Act grants to the State the power to enforce child support obligations against the parents of minor dependent children who have received public assistance. To aid the State in enforcing those obligations, the Act grants to the State a lien which may be imposed upon the real and personal property of the parent obligated to provide child support. Our interpretation of the Act as only giving the State's judgment lien the priority of an ordinary judgment lien does not thwart or run afoul of the main purpose of the Act.

In fact, to conclude otherwise would be to run contrary to the express legislative directive, namely, "that children shall be maintained *from the resources of responsible parents.*" Under the State's position in this case, it is not the parents who would be supporting the children, but rather purchase money lenders, whether vendors or financial institutions. If a special priority were to be granted to the State's judgment lien, the holders of purchase money mortgages, as well as the holders of mortgages and trust deeds which are prior in time to the State's judgment, would be forced to pay the judgment in order to protect their interest and maintain their priority. This would force lenders to protect their interest by resorting to "due-on-divorce" or "due-on-failure-to-pay-child-support" provisions in their notes. We do not believe that the Utah Legislature intended such an absurd result.

■ This Court has previously stated that we will not interpret a statute in such a way that results in an absurdity. *See Mini Spas, Inc. v. State,* Utah, 657 P.2d 1348 (1983); 3 C. Sands, *Sutherland Statutory Construction* § 61.02 at 46 (4th ed. 1974). Our conclusion gives credence to the legislative intent by permitting the State's lien to attach to the parent's interest or equity in property without destroying traditional time-honored and well-established rules of property law which govern the priorities of various liens or claims. Thus, the State's judgment lien, like other judgment liens, takes priority as of the time it is duly docketed or recorded. Like other judgment liens, however, it must also yield to the special priority accorded a vendor's purchase money mortgage.

In conclusion, we hold that (1) this Court has jurisdiction over this case under *Wood v. Turner, supra,* (2) this Court recognizes and follows the doctrine granting purchase money mortgages a special priority, and (3) the Public Support of Children Act does not create an exception to the doctrine granting purchase money mortgages a special priority, but rather, merely grants the State's judgment lien the priority accorded that of an ordinary judgment lien. We therefore affirm the trial court. No costs awarded.

HALL, C.J., and STEWART and OAKS, JJ., concur.

HOWE, J., does not participate herein.