**2025 UT App 114**

### THE UTAH COURT OF APPEALS

COTTONWOOD HEIGHTS CITY,
Petitioner,
*v.*
HONORABLE KRISTINE JOHNSON,
Respondent.

NATALIE BRUCE,
Real Party in Interest.

Opinion
No. 20240446-CA
Filed July 25, 2025

Original Proceeding in this Court

Edward R. Montgomery and Joshua C. Bishop,
Attorneys for Petitioner

Jeremy M. Delicino and Jon D. Williams,
Attorneys for Real Party in Interest

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and
DAVID N. MORTENSEN concurred.

HARRIS, Judge:

¶1     In 2020, Cottonwood Heights City (the City) filed a misdemeanor charge in justice court against Natalie Bruce, who was then a member of its city council, related to actions Bruce took while attending a citizen protest held within the City's municipal boundaries. The justice court judge presiding over the case later dismissed the charge, and the City attempted to appeal the dismissal to the district court and seek a trial de novo. But the City did not wait until after entry of the justice court's judgment to file its notice of appeal; instead, it filed its notice early, after the justice

court judge had announced the ruling but before judgment on that ruling had been entered.

¶2 The question presented here is whether the City's appeal from justice court to district court was timely filed. The district court determined that it was not, and on that basis it dismissed the City's appeal. Ordinarily, parties are not allowed to further appeal—to Utah's appellate courts—decisions a district court makes in the context of justice court trials de novo. *See* Utah Code § 78A-7-118(11). Asserting that it has "no other plain speedy, and adequate remedy" for challenging the district court's dismissal order, *see* Utah R. Civ. P. 65B(a), the City now petitions this court for extraordinary relief. After satisfying ourselves that we have jurisdiction to consider the City's petition, we conclude—for the reasons set forth below—that the City is entitled to extraordinary relief. That is, we agree with the City that—under the governing statute and under Utah Supreme Court caselaw interpreting similar language—its notice of appeal must be considered timely. We therefore issue a writ vacating the district court's dismissal order and reinstating the City's appeal.

BACKGROUND

¶3 In August 2020, Bruce attended a citizen protest held within the City's boundaries. At the time, Bruce was a member of the City's city council. Based on actions Bruce allegedly took during the protest, the City charged Bruce in justice court with "interference with [an] arresting officer," a class B misdemeanor.

¶4 Eventually, Bruce asked the justice court—for reasons not directly relevant here—to dismiss the charge against her. At the conclusion of a hearing on September 29, 2023, the justice court orally granted Bruce's motion to dismiss and directed Bruce to "draft [an] order" reflecting the court's decision. In addition, in the course of making its oral ruling, the justice court told the City that it had the right to appeal and that the City's "appellate right doesn't run from" the day of the oral ruling but rather "runs from

the time that [the justice court] sign[s] the order" that it had just asked Bruce to draft. However, the justice court's docket entry for the day of the oral ruling states that the City "has 28 days from *today* to appeal [the] case." (Emphasis added.)

¶5     On October 16, 2023, 17 days after the justice court's oral ruling, the City filed a notice of appeal.

¶6     On November 13, 2023, about a month later, the justice court entered a written order memorializing its oral ruling and dismissing the charges against Bruce. The City never filed a second or amended notice of appeal after this order was entered.

¶7     After recognizing that the City had not filed a notice of appeal within the 28-day window following entry of the justice court's written order, Bruce filed a motion to dismiss the City's appeal, asserting that, because the City's notice of appeal was filed prior to the justice court's written order, the appeal was premature and therefore untimely and the district court therefore lacked jurisdiction to hear it. Bruce noted that the relevant statute required the City to have filed "a notice of appeal within 28 days *after* the day on which the justice court enters the order or judgment." *See* Utah Code § 78A-7-118(7)(b) (emphasis added). The City opposed the motion, asserting that its notice of appeal was timely because it was filed within the timeframe specified in the justice court's docket entry on September 29. In the alternative, the City asserted that "even if the City's notice of appeal was early it [was] still timely" because Utah law establishes that "premature filings" of notices of appeal "will relate forward." In making this argument, the City referenced rule 4(c) of the Utah Rules of Appellate Procedure, as well as "decades of caselaw" and "underlying policy considerations" that, in its view, support allowing premature notices of appeal. In her reply brief, Bruce asserted that "the Utah Rules of Appellate Procedure do not apply to justice court appeals."

¶8     After full briefing and oral argument, the district court determined that the City's notice of appeal could not be considered timely, and on that basis it granted Bruce's motion to

dismiss the City's appeal. In its written ruling, the district court noted that the justice court "made clear" in its oral ruling "that the 28-day period for filing a Notice of Appeal would not begin to run until entry of the Order." The district court also agreed with Bruce that the Utah Rules of Appellate Procedure do not apply to justice court appeals and that the statute governing district courts' jurisdiction to hear appeals from justice courts "contains no such safe harbor" for premature appeals. The district court therefore dismissed the City's appeal for lack of jurisdiction.

ISSUE AND STANDARD OF REVIEW

¶9     The City takes issue with the district court's ruling dismissing its appeal from the justice court's order dismissing the charges against Bruce. The City cannot, however, appeal the district court's ruling directly to us, because Utah appellate courts may consider a direct appeal from a district court order in a justice court trial de novo only when the district court, in adjudicating the trial de novo, has made a ruling on the constitutionality of a statute or ordinance. *See* Utah Code § 78A-7-118(11). Here, the district court made no ruling on the constitutionality of any statute or ordinance, and therefore the City cannot mount a direct appellate challenge to the district court's dismissal order.

¶10     Instead, the City has filed a petition for extraordinary relief, invoking rule 65B(d) of the Utah Rules of Civil Procedure and rule 19 of the Utah Rules of Appellate Procedure. The City asserts that, because of the statute barring non-constitutional appeals in this case, it has no other avenue by which it can challenge the district court's ruling declaring its notice of appeal to have been untimely filed. And it asks us for extraordinary relief in the form of an order commanding the district court to vacate its

order of dismissal and to reinstate the City's trial-de-novo appeal from the justice court ruling.[1]

¶11    Extraordinary relief is available when a lower court has "abused its discretion" and "[w]here no other plain, speedy and adequate remedy is available." Utah R. Civ. P. 65B(a), (d)(2). This "abuse-of-discretion standard of review will typically include review to ensure that no mistakes of law affected a lower court's use of its discretion." *Kamoe v. Ridge*, 2021 UT 5, ¶ 9, 483 P.3d 720 (cleaned up). Here, the question is, at root, one of statutory interpretation, namely, whether Utah statutes governing trial-de-novo appeals from justice court to district court allow premature notices of appeal—like the one the City filed here—to be considered timely. "The proper interpretation of a statute is a question of law." *Id.* (cleaned up).

¶12    But before examining the district court's interpretation of the statute, we must first satisfy ourselves that we—as opposed to our supreme court—have jurisdiction to consider the City's petition. Whether an appellate court has jurisdiction to decide a matter "is a question of law which we decide in the first instance." *State v. Redden*, 2022 UT App 14, ¶ 11, 505 P.3d 1146 (cleaned up).

ANALYSIS

I. The Court of Appeals' Jurisdiction

¶13    Under Utah law, both our supreme court and this court have statutory "jurisdiction to issue all extraordinary writs," as well as "authority to issue all writs" necessary to carry out our

---

1. On the same day she filed her brief in opposition to the City's petition, Bruce also filed a motion to permit additional briefing on "[w]hether the City constitutes a 'person' that would allow it to file a petition for extraordinary relief." But Bruce offers no reason why briefing on this issue could not have been included in her principal opposition brief. On this basis, we deny Bruce's motion.

judgments and aid our jurisdiction. Utah Code § 78A-3-102(2) (supreme court statute); *see id.* § 78A-4-103(2) (court of appeals statute); *see also Barnard v. Murphy*, 882 P.2d 679, 681–82 (Utah Ct. App. 1994) (comparing the two statutes). Certainly, at least one of the two Utah appellate courts must have jurisdiction to adjudicate the City's petition. The jurisdictional question presented here is whether this court possesses that authority, or whether that authority lies only with our supreme court.

¶14   Neither the governing statutes nor the applicable procedural rules offer much guidance in helping us determine which of the two appellate courts (or both) has jurisdiction here. The applicable rule states simply that "[w]hen no other plain, speedy, or adequate remedy is available, a person may petition *an* appellate court for extraordinary relief." Utah R. App. P. 19(a) (emphasis added). But it doesn't specify which one.

¶15   The governing statutes aren't appreciably more helpful. They afford both appellate courts jurisdiction "to issue all extraordinary writs." Utah Code §§ 78A-3-102(2), 78A-4-103(2). There is one textual difference between the two statutes, namely, that our supreme court is vested with "*original* jurisdiction" to issue extraordinary writs, *id.* § 78A-3-102(2) (emphasis added), while we are merely given "jurisdiction," without the modifier, *id.* § 78A-4-103(2). But we have already determined that this textual difference doesn't matter in this context, *see Barnard*, 882 P.2d at 682 ("[T]he term 'original' adds nothing to the Supreme Court's writ jurisdiction—and its absence takes nothing from ours."), and that decision is binding on us unless we were to overrule it, which no party asks us to do, *see State v. Legg*, 2018 UT 12, ¶ 9, 417 P.3d 592 ("The doctrine of horizontal stare decisis applies as between different panels of the court of appeals." (cleaned up)).

¶16   Instead of relying on the term "original," the *Barnard* court found guidance in the phrase "in aid of [the court's] jurisdiction," which appears in both jurisdictional statutes. 882 P.2d at 681 (cleaned up). That is, both appellate courts are authorized to issue writs "in aid of" their respective jurisdiction. Utah Code §§ 78A-

3-102(2), 78A-4-103(2). We noted that "the authority to issue a writ in aid of appellate jurisdiction is not confined to the issuance of writs in aid of a jurisdiction already acquired by appeal but extends to those cases which are within its appellate jurisdiction although no appeal has been perfected." *Barnard*, 882 P.2d at 681 (cleaned up). And we concluded that our jurisdiction over petitions for extraordinary writs—which is not *appellate* jurisdiction—was thus nevertheless connected to whether we (or our supreme court) would have appellate jurisdiction in a direct appeal of the underlying case regarding which a writ is sought. *Id.* ("[B]ecause this court has appellate jurisdiction over the subject matter of [the underlying case], a divorce case, we have authority to issue necessary writs in connection with that case even if no appeal is pending."); *see also V-1 Oil Co. v. Department of Env't Quality*, 893 P.2d 1093, 1095 (Utah Ct. App. 1995) ("Because this court has appellate jurisdiction over the subject matter of the underlying agency action . . . this court has jurisdiction over the instant petition."), *rev'd on other grounds*, 939 P.2d 1192 (Utah 1997). In other words, we have discerned in the governing jurisdictional statutes a rule that the two appellate courts divide jurisdiction over petitions for extraordinary writs, and that each appellate court has jurisdiction to adjudicate those petitions that arise from cases that would—if appealed—fall within that court's appellate jurisdiction.

¶17 Since then, Utah's appellate courts have fashioned internal procedures that reflect this approach. These internal procedures clarify that our supreme court is deemed to have jurisdiction to adjudicate petitions for extraordinary writs in all civil cases arising from district court, except domestic relations matters, and in all first-degree felony and capital criminal cases. And these procedures specify that this court is deemed to have jurisdiction to adjudicate petitions for extraordinary writs in civil cases related to domestic relations and administrative agencies heard in district court, and in all criminal cases except first-degree felony and capital cases. Each petition for an extraordinary writ that is filed with the Utah appellate courts—regardless of whether the parties caption that document as having been filed in one court or the

other—is then routed to the appropriate court for adjudication, based on these procedures and principles.

¶18    When the City's petition for an extraordinary writ was filed, it was routed to this court because the underlying case regarding which a writ is sought—the justice court case brought by the City against Bruce, in which the charge is a class B misdemeanor—is a criminal case that involves neither (a) a first-degree felony or capital charge nor (b) a ruling declaring a statute unconstitutional. *See* Utah Code § 78A-3-102(3)(g)–(i). Thus, our supreme court would not have original appellate jurisdiction over a hypothetical direct appeal in the underlying case, and therefore our supreme court is not deemed to have jurisdiction, in the first instance, over the City's petition.

¶19    The issue is made somewhat more complicated by the fact that, in this unique situation, *neither* appellate court would have appellate jurisdiction over a hypothetical appeal in the underlying case, because (absent a ruling on the constitutionality of a statute or ordinance) district court decisions in trial-de-novo appeals cannot be appealed further. But when examined more broadly, and in light of the principles articulated in *Barnard* and reflected in the appellate courts' internal procedures, it is this court—and not our supreme court—that is deemed to have jurisdiction here, and that determination turns on the severity of the underlying criminal charge, here a class B misdemeanor. In situations where class B misdemeanor charges are filed and adjudicated in district court (rather than justice court), any appeals fall within this court's appellate jurisdiction, which covers "criminal cases, except those involving a conviction or charge of a first degree felony or capital felony." *Id.* § 78A-4-103(3)(e); *see also, e.g., American Fork City v. Robinson*, 2012 UT App 357, ¶¶ 1–2, 8–9, 293 P.3d 1105 (adjudicating an appeal of a class B misdemeanor conviction for "interfering with an arresting officer"); *Orem City v. Bovo*, 2003 UT App 286, ¶¶ 1, 3, 6, 76 P.3d 1170 (adjudicating an appeal of a class B misdemeanor conviction for reckless driving and an infraction for disorderly conduct).

¶20    For these reasons, we are satisfied that we have jurisdiction to adjudicate the City's petition, and we therefore proceed to address its merits.

## II. The Merits of the City's Petition

¶21    With regard to those merits, the question presented is whether the City's notice of appeal—which was filed after the justice court announced its ruling but before it entered the order memorializing it—was timely filed. The district court determined that the notice was not timely filed, and on that basis it dismissed the City's district court appeal from the justice court's dismissal order. The City challenges that determination as erroneous. For the reasons that follow, we agree with the City.

¶22    "Timely notice of appeal is jurisdictional." *Nelson v. Stoker*, 669 P.2d 390, 392 (Utah 1983). Thus, for the district court to have jurisdiction to hear the City's appeal from the justice court's dismissal order, the City must have filed that appeal timely.

¶23    What is "timely" here is—perhaps counterintuitively—not dictated by rule. Ordinarily, questions about whether an appeal is timely filed are answered by resort to the Utah Rules of Appellate Procedure. *See generally* Utah R. App. P. 4. And if these rules applied here, this case would present an easy question because the rules clearly specify that "[a] notice of appeal filed after the announcement of a decision . . . but before entry of the judgment or order will be treated as filed after such entry and on the day thereof." *Id.* R. 4(c). But our rules of appellate procedure, by their own terms, govern proceedings in the Utah Supreme Court and the Utah Court of Appeals. *See id.* R. 1(a) ("These rules govern the procedure before the Supreme Court and the Court of Appeals of Utah in all cases."). They do not govern proceedings in district courts, including trial-de-novo appeals from justice courts. And thus this case cannot be resolved simply by resorting to rule 4(c).

¶24    Rather, the procedures governing trial-de-novo appeals from justice courts are set forth in statute. *See generally* Utah Code § 78A-7-118. And the relevant provision requires any

"prosecutor" who is "seeking an appeal" from an adverse justice court order to "file a notice of appeal within 28 days after the day on which the justice court enters" the order. *Id.* § 78A-7-118(7)(b). Bruce puts particular emphasis on the word "after," and he points out that the City did not file a notice of appeal during the 28-day window that followed the entry of the justice court's written order. And Bruce points out that the governing statute—as opposed to the Utah Rules of Appellate Procedure—contains no provision specifying that early-filed notices of appeal will be considered timely. The district court found this fact particularly persuasive, inferring from the absence of such a provision that our legislature must have intended for early-filed notices of appeal from justice court to district court to be considered untimely.

¶25    As discussed below, based largely on caselaw that existed before rule 4(c) was enacted, we draw a different inference from the absence of such a provision in the governing statute. But before drawing inferences from extra-textual sources, we must first examine whether the answer to our question may be found in the plain text of the statute. After all, "the point of statutory interpretation is to ascertain the intent of the legislature," and the "best evidence of legislative intent is the language our legislature used." *State v. Wilkerson*, 2020 UT App 160, ¶ 10, 478 P.3d 1048 (cleaned up); *see also Hertzske v. Snyder*, 2017 UT 4, ¶ 10, 390 P.3d 307 ("The best indicator of legislative intent is the plain language of the statutes themselves.").

¶26    Here, the statute states simply that a prosecutor "shall file a notice of appeal within 28 days after the day on which the justice court enters the order or judgment." Utah Code § 78A-7-118(7)(b). Bruce puts forth a reasonable interpretation of that phrase, arguing that it means that a notice of appeal must be filed within the 28-day window immediately following the entry of the target order. But as the City points out, the statute doesn't plainly *bar* early-filed appeals—as the City sees it, the statute simply sets a deadline, requiring only that the notice of appeal be filed at some point prior to 28 days after entry of the target order. In our view, this is also a reasonable interpretation of the statutory language.

And when a statute bears two reasonable interpretations, it is ambiguous. *See Wilkerson*, 2020 UT App 160, ¶ 11 ("A statute is considered ambiguous if its terms remain susceptible to two or more reasonable interpretations after we have conducted a plain language analysis." (cleaned up)).

¶27 In this situation, where the relevant statutory language is ambiguous, we must "resort to other modes of statutory construction and seek guidance from legislative history and other accepted sources." *Id.* ¶ 10 (cleaned up). One tool often used in this situation is to examine similar or adjacent statutory provisions, and to consider whether our legislature used similar language in other places. For instance, where our legislature includes a phrase or provision in one context but omits it in another, we generally "presume" that the omission was "purposeful." *See Penunuri v. Sundance Partners, Ltd.*, 2013 UT 22, ¶ 15, 301 P.3d 984 (cleaned up); *see also Williamson v. Farrell*, 2024 UT App 111, ¶ 35, 557 P.3d 214 ("We presume that the legislature used each word advisedly, and deem all omissions to be purposeful." (cleaned up)). It is therefore understandable that one might, as the district court did, infer from our legislature's decision not to include a rule 4(c)-like provision in the justice court trial-de-novo statute that our legislature intended for early appeals in that context to be considered untimely.

¶28 But there are other considerations at play here. As the City points out, appellate-timeliness rules and statutes that *do not* contain a rule 4(c)-like provision have been held to allow prematurely filed appeals in cases like this one. From these cases, the City draws a different inference than the district court did: it asserts that rule 4(c) was enacted merely for clarity, to codify the common-law interpretation that had long been in existence. And it asserts that we should interpret section 78A-7-118(7)(b) similarly to the way our supreme court interpreted our appellate-timeliness rules prior to the enactment of rule 4(c): to allow notices of appeal filed after announcement of the ruling but before entry of the written target order to be deemed timely. We find the City's analysis persuasive.

¶29    Utah enacted rule 4(c) in 1985. *See* Utah R. App. P. 4(c) (1985); *see also id.* R. 4(c) advisory committee's note to 1985 enactment (stating that rule 4(c) had "no counterpart in prior Utah practice").[2] The drafters of the 1985 rule changes emphasized that their addition of rule 4(c) was patterned after a similar federal rule of appellate procedure that had been enacted six years earlier, in 1979. *See* Utah R. App. P. 4(c) advisory committee's note to 1985 enactment (stating that rule 4(c) was, "in substantial part, an adoption of Rule 4(a)(2)" of the Federal Rules of Appellate Procedure); *see also Nelson v. Stoker*, 669 P.2d 390, 392–93 (Utah 1983) (noting that the analogous federal rule had been adopted in 1979). Thus, prior to 1979 (at the federal level) and prior to 1985 (in Utah), there were no rules of procedure specifying whether prematurely filed notices of appeal were to be considered timely.

¶30    In the absence of any specific rule-based guidance, many courts—both federal and state—held that early-filed appeals should generally be considered timely. *See* Fed. R. App. P. 4(a)(2) advisory committee's note to the 1979 amendment ("Despite the absence of such a provision in Rule 4(a) the courts of appeals quite generally have held premature appeals effective."), *quoted in Nelson*, 669 P.2d at 393; Lexia B. Krown, *Clarity as the Last Resort? Why Federal Rule of Appellate Procedure 4 Should and Could Stipulate*

---

2. Utah's "Rules of Appellate Procedure took effect on January 1, 1985." *State v. Johnson*, 700 P.2d 1125, 1129 n.1 (Utah 1985). Prior to this date, procedural rules pertaining to appeals were scattered in our rules of civil procedure and in statute. *See* Utah Rules of Appellate Procedure, introductory note (1985) (stating that "the prior rules concerning appellate procedure and practice" that had theretofore been found in the rules of civil procedure were "repealed"); *see also, e.g., Nunley v. Stan Katz Real Estate, Inc.*, 388 P.2d 798, 800–01 (Utah 1964) (considering a party's argument for relief after failing to file a timely designation of record on appeal pursuant to our rules of civil procedure); *Stubbs v. Third Jud. Dist. Court of Salt Lake County*, 150 P.2d 783, 786 (Utah 1944) (discussing appeals as of right in the context of final judgments and referencing statutory sources).

*Which Judgments Are "Final,"* 70 Ohio St. L.J. 1481, 1491 (2009) ("[B]efore 1979, the year when Rule 4(a)(2) was adopted, federal appellate courts had developed a common practice of treating certain notices of appeal as admissible for an appellate review even when such notices had been filed before the final decision–prematurely."); *see also, e.g., Richerson v. Jones*, 551 F.2d 918, 922 (3d Cir. 1977) ("We believe . . . that a premature appeal taken from an order which is not final but which is followed by an order that is final may be regarded as an appeal from the final order in the absence of a showing of prejudice to the other party."); *Williams v. State*, 324 So. 2d 74, 79 (Fla. 1975) ("[A] notice of appeal which is filed after the oral pronouncement of judgment and/or sentence, but before rendition thereof, is not to be dismissed on the grounds that it is premature.").

¶31     Our supreme court followed this approach. In 1966, it held that a notice of appeal filed after the district court announced its ruling but prior to the entry of the "formal judgment" was timely. *Wood v. Turner*, 419 P.2d 634, 634–35 (Utah 1966). In that case, the court determined that "[t]he premature filing of the notice of appeal . . . should not be regarded as a defect which will ipso facto entirely deprive the appellate court of jurisdiction." *Id.* at 635. And it noted that rules and statutes "implementing the right of appeal are liberally construed and applied in the furtherance of justice; and that an interpretation which will prevent that right from being exercised is not favored." *Id.*

¶32     Then, some seventeen years later, our supreme court reaffirmed its holding in *Wood*, again allowing a premature notice of appeal that had been filed after the court announced its ruling but before the court's formal judgment was entered. *Nelson*, 669 P.2d at 392–93. At the time the court issued its opinion in *Nelson*, the new federal rule codifying the long-standing common-law interpretation had been enacted. *See id.* (quoting Fed. R. App. P. 4(a)(2)). But Utah had not yet enacted a similar rule. In this context, the court relied on both the common-law rule (as set forth in *Wood*) and on the new federal rule, and it concluded that "[t]he *Wood* decision remains good law and reflects the great weight of

authority." *Id.* at 393. The court "reaffirm[ed its] holding" in *Wood*, and it held that the prematurely filed notice of appeal was timely. *Id.* at 392–93.

¶33 Important to our analysis is the fact that the text of the appeal-deadline rule that was at issue in *Nelson* is quite similar to the text of the statute we are asked to apply and interpret here. In *Nelson*, our supreme court was applying a then-extant rule of civil procedure that "require[d] an appellant to file a notice of appeal with the [district] court within 'one month *from* the date of the entry . . . of the judgment or order appealed from.'" *Id.* at 392 (emphasis added) (quoting Utah R. Civ. P. 73(a)). In this case, we are asked to apply a statute that requires appellants to file "a notice of appeal within 28 days *after* the day on which the justice court enters the order or judgment." Utah Code § 78A-7-118(7)(b) (emphasis added). For present purposes, the only notable textual difference between the two phrases is that the previous version of rule 73(a) uses the word "from," while the current justice-court-appeal statute uses the word "after." And we are simply unpersuaded that these two words, in this context, were intended to have materially different meanings. Thus, the persuasive value of *Wood* and *Nelson* is high here, where the text of the governing phrases is functionally identical.

¶34 Accordingly, under Utah law in existence since at least 1966, notices of appeal required to be filed "within" a number of days "from" or "after" entry of judgment are considered timely if they were filed after announcement of the oral ruling but before entry of the written final judgment memorializing that oral ruling. And this holds true regardless of whether the rule-based or statutory-based scheme at issue contains a specific provision (such as the current rule 4(c)) expressly saying so.

¶35 We must construe and interpret the relevant statutory language against this common-law backdrop. Cases like *Wood* and *Nelson* teach us that, even before rule 4(c) was enacted, premature notices of appeal—defined here as notices filed after announcement of the ruling but before entry of judgment—were

considered timely. Thus, provisions like Utah's rule 4(c) (and, apparently, the federal rule 4(a)(2)) were not intended to create a new rule but, instead, were intended simply to codify existing judicial interpretations of relevant rule language.

¶36   Because of this historical backdrop, the absence of a specific provision regarding premature appeals in the justice-court-appeal statute does not warrant the inference the district court drew. Instead of inferring that the absence of such a provision—especially when contrasted with the presence of such a provision in rule 4(c)—must mean that premature appeals are untimely, we infer that the statutory language at issue here bears the same interpretation as the similar language at issue in *Wood* and *Nelson*: that premature appeals are to be considered timely, at least when they are filed after announcement of the ruling but before entry of judgment. We consider *Wood* and *Nelson* to be analogous here, and we view them as extremely persuasive—if not binding—precedent from our supreme court indicating that the City's appeal here should be considered timely.

¶37   Thus, we conclude that, under the applicable statutory language, *see* Utah Code § 78A-7-118(7)(b), notices of appeal filed in district court challenging a justice court decision must be considered timely if they were filed after announcement of a ruling but before entry of the final judgment memorializing that ruling. The City's notice of appeal falls into this category and must therefore be considered timely. The district court's contrary conclusion was erroneous.

¶38   Finally, having determined that the district court's dismissal of the City's appeal as untimely was error, we must now decide whether to exercise our discretion to grant the City the relief requested. "We have broad discretion to grant or deny extraordinary relief, and, in exercising our discretion, we consider a variety of factors including the nature of the relief sought, the circumstances alleged in the petition, and the purpose of the type of writ sought." *Marin v. Utah State Bar*, 2025 UT 18, ¶ 10 (cleaned up); *see also Blanke v. Utah Board of Pardons and Parole*, 2020 UT 39,

¶ 14, 467 P.3d 850 ("When deciding whether to grant the relief sought in a rule 65B(d) petition, a court will consider multiple factors such as the egregiousness of the alleged error, the significance of the legal issue presented by the petition, and the severity of the consequences occasioned by the alleged error." (cleaned up)).

¶39 We choose to exercise that discretion here in favor of granting the requested relief. For one thing, the legal issue—whether the principles set forth in *Wood* and *Nelson* apply to appeals from the justice court to the district court—is significant. It is likely that this issue will arise again, and issuing the writ in this case will provide guidance for future cases. Moreover, the issue here is important to these parties: the City's right to appeal depends on the outcome of this case, and if the writ does not issue, then the City will not be able to challenge, in the district court, the dismissal of its justice court case. Accordingly, we choose to exercise our discretion to grant the City the relief it requests.[3]

CONCLUSION

¶40 We have jurisdiction to adjudicate the City's petition for extraordinary relief. On the merits of that petition, we conclude that the district court erred by dismissing the City's appeal as untimely, and we elect to exercise our discretion to issue the writ the City requests. Accordingly, we vacate the district court's order dismissing the City's trial-de-novo appeal for lack of jurisdiction, and we order that appeal reinstated.

---

3. In petitioning this court, the City makes other arguments as to why its appeal to the district court should not have been dismissed for lack of jurisdiction. However, because we reverse the dismissal of the City's appeal for the reasons already stated, we need not address the City's alternative arguments.